CITY–WIDE ASPHALT CO., INC., ex rel.
CITY OF KANSAS CITY, Missouri and
Curb Contractors, Inc., ex rel. City of
Kansas City, Missouri, Respondents,

v.

E. E. SCOTT CONSTRUCTION CO.,
INC., and United States Fidelity and
Guaranty Company, Appellants.

No. WD 30886.

Missouri Court of Appeals,
Western District.

Dec. 2, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 30, 1980.

Keith E. Witten, of Sandler, Balkin, Hellman & Weinstein, Kansas City, for appellants.

John J. Phillips, Independence, for respondents.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a judgment awarding recovery of monies upon a contractor's performance and maintenance bonds. Two separate actions were originally filed, then consolidated for trial. Trial was had before the court upon written waiver of trial by jury. The judgment is affirmed and remanded with directions.

Review of this cause is made pursuant to Rule 73.01 as interpreted by *Murphy*

v. *Carron,* 536 S.W.2d 30 (Mo.banc 1976), and the judgment will not be set aside unless the judgment is unsupported by substantial evidence; unless the judgment is against the weight of the evidence; unless the judgment erroneously declares the law or unless the judgment erroneously applies the law.

Appellants present nine points of error and while each is addressed by this court, the points presented are, for purposes of disposition, summarized and considered as three because seven of the nine points attack specific findings of fact and conclusions of law entered by the trial court. These referenced seven will be addressed specifically herein, but for purposes of organization of this opinion, these seven points will be viewed as the third or final alleged error. Appellants charge the trial court erred in (1) adopting in total respondents' proposed findings and conclusions because said findings and conclusions do not address the issue of delay on one of the road projects; because such adoption does not reveal the trial court's reasoning or basis for its decision; and some of said findings and conclusions are not supported by the evidence; (2) admitting certain oral testimony in that said testimony contradicted the terms of a written assignment and thus violated the parol evidence rule and (3)(a) failing to allow interest at 6% on the amount granted to appellant as a setoff because the parties had stipulated the amount of the setoff and the court under a specific finding had found the amount was liquidated; (b) making its specific finding deducting from the setoff granted appellants the total amount of liquidated damages assessed against respondents in that the evidence supports a finding that appellants were not responsible for any more than half of the assessed liquidated damages involved; (c) in its specific finding denying appellants a setoff in the sum of $1,500 for a field laboratory; (d) in its specific finding which resulted in a deduction of $4,723.70, said amount representing contract backcharges, from the offset granted appellant E. E. Scott Construction Co., Inc., because the evidence did not support said amount of backcharges; (e) in its specific finding which granted judgment against appellant E. E. Scott Construction Co., Inc., in that the evidence showed the parties had reached an accord and satisfaction; (f) in its specific finding that consent and approval by the State Highway Commission of an assignment between the parties did not affect a modification of the contract between the parties and did not discharge the surety on the performance and maintenance bond and finally (g) in its specific finding of failing to grant appellant E. E. Scott Construction Co., Inc., a setoff for damages caused by respondents' delays.

The parties stipulated to a large portion of the facts and in addition, upon the record, delineated the remaining factual issues in dispute. These disputed issues produced extensive oral testimony and a long list of exhibits.

Before summarizing the disputed issues or disposing of the alleged points of error, it is necessary to identify the parties and their respective roles in this controversy. All parties hereto are corporations authorized to do business in Missouri. Appellant, E. E. Scott Construction Co., Inc., (hereafter referred to as Scott Construction) is an excavating contractor sometimes referred to as a "dirt contractor". Respondent, City-Wide Asphalt Co., Inc., (hereafter City-Wide) is a producer of asphalt products and an asphalt road paver. Respondent Curb Contractors, Inc. (hereafter Curb) is a specialty contractor which performs finish work such as curbings, drains, etc., along roadways. United States Fidelity and Guaranty Company (hereafter USF&G) is an insurance carrier who provided (as surety) the performance and maintenance bond for Scott Construction. The City of Kansas City, Missouri (hereafter City) was a principal party to one of the paving contracts referred to herein, along with the Missouri Highway Commission (hereafter Commission) who was a principal party to two other paving contracts referred to herein.

The three paving contracts involved three geographical locations and since they are referred to repeatedly herein, they will be

identified as the "Highway 10 job", "the City job" and the "U.S. 40 job".

The contested issues are summarized as follows: (a) Was Scott Construction entitled to compensation for *ditch liner repair* on the Highway 10 job? (b) Was Scott Construction entitled to payment for certain billing on the Highway 10 job? (c) Did Scott Construction provide a field laboratory for which it was entitled to be compensated? (d) Did Scott Construction provide *rework-regrading* for seeding purposes on the Highway 10 job for which it was entitled to compensation? (e) Was Scott Construction entitled to compensation for labor and supervisor costs for pumping *grout* on the Highway 10 job? (f) Was City-Wide entitled to deduct any additional backcharges from the amount due Scott Construction on the Highway 10 job? (g) Was City-Wide entitled to deduct liquidated damages from the amount due Scott Construction on the Highway 10 job? (h) Was Scott Construction entitled to compensation for one-half of the cost of air-conditioning of the field office on the Highway 10 job? (i) Did City-Wide agree to an assignment from Scott Construction on Scott Construction's contract with the Commission on the U.S. 40 job? (j) Did City-Wide cause any delays, thus damaging Scott Construction on the U.S. 40 job, and was City-Wide entitled to payment of $285.00 for reinforcing steel?

Scott Construction was a *subcontractor* and City-Wide was the *general contractor* on the Highway 10 job. On the City job and the U.S. 40 job, Scott Construction was the *general contractor* and respondents were *subcontractors*. This cause was initiated by two separate suits which were consolidated for trial. In their claims, respondents alleged that Scott Construction owed them monies for labor and material furnished on the city job and the U.S. 40 job. USF&G was joined as a party by virtue of its role as surety upon the bond for Scott Construction.

In response, Scott Construction filed its answer, denying that any monies were due and that USF&G had been discharged on the bond as a result of an assignment of

contracts between the parties (without notice to USF&G). In addition, Scott Construction filed a counterclaim for recovery of monies for certain items alleged to have been furnished on the job sites and for damages alleged to have resulted from respondents' delay in performance.

For purposes of disposition, it is not necessary to recite the thorough and well prepared agreed-to stipulation of facts.

The evidence reveals no dispute regarding the city job, and it was agreed that Scott Construction owed respondent City-Wide the sum of $42,322.49, and respondent Curb, $5,868.30. The evidence regarding the Highway 10 job reveals that the reasonable value for labor and material furnished by Scott Construction was $278,478.32. Respondents had paid to Scott Construction the sum of $252,585.32 on the Highway 10 job. The Highway 10 job was accepted by the Commission on October 29, 1974. It should be pointed out that during the completion of the Highway 10 job, Scott Construction had become the general *contractor* and respondents the *subcontractors* on the U.S. 40 job. There remained money due Scott Construction on the Highway 10 job from respondents. Scott Construction found itself in a cash-short position and assigned to City-Wide all remaining right and interest of Scott Construction in the Highway 10 job. This assignment is not to be confused with the later-referred-to assignment.

Concerning the Highway 10 job, Scott Construction testified it provided a job trailer which was used as a field lab and that City-Wide was allowed, under the original contract (with the Commission) the sum of $1,500 for such service. Scott Construction further testified that an agreement between itself and representatives of City-Wide was reached whereby Scott Construction would be paid the $1,500 sum. Respondents' testimony was that they could recall no such agreement. The evidence then revealed that an agreement existed between the parties regarding backcharges on the Highway 10 job contract, and Scott Construction claimed there was due thereon

only the sum of $4,632.52, with respondents claiming a sum of $4,732.70.

There existed an assessment of $8,700.00 against City-Wide on the Highway 10 job. This sum represented liquidated damages for 58 days delay. The Commission waived 30 days, reducing the liquidated damages to $4,200.00. The evidence was controverted over who caused the delay. Scott Construction claimed that incorrect placement of stakes and design errors caused it to excavate for a drainage ditch in the wrong location. Scott Construction further claimed that the failure of the "seed contractor" to perform caused Scott Construction to have to rework the area for seeding purposes. The drainage ditch was washed out from underneath and a ditch liner had to be replaced. Respondents contend that the delays, resulting in assessment of liquidated damages, were occasioned by Scott Construction's slow work, its incorrect placement of the original ditch, its improper backfill for the drainage ditch, and the fact that about half of the days reflected in the liquidated damages were occasioned by respondents having to simply keep Scott Construction on the job "a lot of times".

The evidence further included events surrounding the U.S. 40 job. In December of 1974, the parties held a meeting wherein it was agreed that Scott Construction would and did assign to City-Wide any profits from the Highway 10 job as payment for monies due City-Wide by Scott Construction for the U.S. 40 job. Scott Construction was still in a cash-short position, and in regard to payment to City-Wide for monies due (by Scott Construction), the parties discussed an assignment of the U.S. 40 job from Scott Construction to City-Wide. This discussion culminated in the draft of a document captioned "Request for Assignment". It was addressed and forwarded to the Commission. This document advised the Commission that City-Wide intended to take over the U.S. 40 job from Scott Construction. The Commission responded that subject to approval (which was later given) by the Department of Transportation, the Commission consented to such assignment.

City-Wide never took over the U.S. 40 job and it was completed by Scott Construction 65 days subsequent to the called-for completion date. Scott Construction was assessed $6,500 as liquidated damages. Concerning the completion of the U.S. 40 job, the evidence was highly controverted. Scott Construction contended that City-Wide repeatedly failed to show up at various times to lay asphalt paving when "grade" was ready, and that by such delay, it had to do the regrading. Scott Construction further contended that it relied upon the later assignment, assuming that City-Wide was going to take over the job, and thus sold a large portion of its equipment because it was reducing its operation. Later, when Scott Construction discovered that City-Wide refused to take over the U.S. 40 job, it incurred costs for rental of equipment and labor expense to complete the U.S. 40 job. Respondents countered with evidence that as "grade" was prepared, City-Wide responded and laid asphalt; and that Scott Construction's progress in preparation of the grade, and not respondent's failure to show up, caused the delay. There was evidence that during this period (Summer, 1975) heavy intermittent rains occurred.

Respondent Curb attempted to install the curbing at the intersection of U.S. 40 Highway and Noland Road but was unable to install *asphalt curbing*. It was agreed and was approved by the Commission that concrete curbing could be installed. The additional requirement for concrete curbing, however, was the installation of steel reinforcing rod. Scott Construction installed the curbing along with the steel rod. The cost of the steel rod was $285.00.

Respondents' claim against Scott Construction was for the sum of $87,057.15, plus interest and attorneys fees, and conversely, Scott Construction sought recovery against respondents for the sum of $92,661.67, plus interest and attorneys fees.

■ In appellants' first point of error, they argue that the trial court erred in adopting respondents' findings of fact and conclusions of law in toto. The record reveals that prior to the submission of the

evidence, respondents were the only party to make such formal request. Failure to make such request gives a party no basis to complain, nor does the failure to make such request entitle a party to such findings and conclusions, see *Davis v. Broughton*, 369 S.W.2d 857 (Mo.App.1963); *Rauth v. Dennison*, 357 S.W.2d 201 (Mo.App.1962); *Schreck v. Parker*, 388 S.W.2d 538 (Mo.App.1965) and *Listerman v. Day and Night Plumbing and Heating Service, Inc.*, 384 S.W.2d 111 (Mo.App.1964).

The trial judge had a discussion about the submission of briefs for the trial court. In respect thereto, and as the only reference to findings and conclusions other than respondents' formal motions for same, the record reveals the following:

"THE COURT: As I understand it, the parties want to submit briefs, together with proposed findings and conclusions? MR. WITTEN: Yes."

The above court statement followed a recess wherein a conference was held between the court and counsel for the parties. The record does not reveal the exact nature of the off-record conference. It is respondents' argument that during this recess, the court preliminarily expressed what its findings and conclusions were going to be and respondents attempted to prepare and submit suggested findings and conclusions along the lines reflected by the trial judge.

■ While it is true, as appellants argue, that findings of fact and conclusions of law are to be the sum total of the court's findings, independent of the parties suggestion, it is also true that the controlling factor is whether or not such findings and conclusions are supported by the evidence. The wording of the judgment entry by the trial court dispels appellants' argument. The pertinent portion of the judgment reads as follows:

"... in accordance with the Findings of Fact and Conclusions of Law submitted by the Plaintiffs ..."

It is true that the judgment further acknowledges adoption of plaintiffs' (respondents') findings and conclusions, but absent

what might be described as a poor choice of wording by the trial judge, there is nothing on this record which suggests the trial judge did not consider findings and conclusions submitted by appellants.

■ The trial judge presided over the proceeding with attentive interest and followed the evidence throughout the proceedings. Appellants' argument fails to persuade this court that they (appellants) suffered any disadvantage or prejudice as a result of the action by the trial judge in regard to this issue. Point (1) is ruled against appellants.

In support of their second point, appellants argue the trial court erred in permitting a witness for respondents to testify relative to the assignment on the U.S. 40 job. Appellants' argument is that such testimony violated the parole evidence rule because the assignment was a clear unambiguous recitation of an agreement between the parties. The oral evidence which appellants attack was that of a representative of City-Wide, and the pertinent parts of the record which bear on appellants' contention are as follows:

"Q. Do you know when this meeting— and you indicated that you had a conversation with Mr. Scott regarding a proposed assignment on Highway 40—what was the reason for even discussing an assignment?

A. Well, I was kind of curious how I was going to be paid and I was kind of curious, you know, how I was going to finish the job if somebody else done the job or whatever happens.

\*   \*   \*   \*   \*   \*

MR. WITTEN: Your Honor, I am going to object to that question because I think under the Parole Evidence Rule, the questions asking the witness to alter a contract which is Exhibit 25, wherein City-Wide Asphalt Company agreed to take over the Highway 40 job, is on the basis of the Parole Evidence Rule and I object.

THE COURT: I don't think he is asking him to vary the contract. The question is asking him if he entered into the contract. Am I right?

MR. EWAN: That is right.

THE COURT: He is not intending to vary it. You have the right, if he does that. I think he is asking him if that is what he agreed to.

MR. WITTEN: Perhaps the term "vary" or "alter" can be subject to various meanings, but since Exhibit 25 says City-Wide agreed to take over the job, it would seem to me if there was testimony that he did not offer to take over the job, but agreed to take over the job, that would be a variance.

THE COURT: That isn't what he said. He simply asked him if he agreed to take it over. Why don't we see what his answer is, and if you have an objection, you can object and ask that it be stricken.

Q. (By Mr. Ewan) At the time of your meeting with Mr. Scott, did you agree to take over the Highway 40 job?

A. No, sir."

Following the foregoing testimony, the court stated,

"THE COURT: Well, it looks to me like you have got an application here on behalf of both of the parties to the State Highway Commission to have the contract assigned. That's what it says, but you are challenging, as I understand it, that there was after that a contract."

There then followed testimony and counsel's discussion over Scott Construction's not supplying City-Wide with pertinent details of the U.S. 40 job to determine if sufficient profit remained on the job to warrant City-Wide's taking over the job. It was part of appellants' evidence that the pertinent information was furnished City-Wide.

■ The evidence offered by City-Wide was to the question of the existence or nonexistence of a binding agreement. Oral evidence is permissible and not violative of the parol evidence rule to resolve such issue, see *Boyle v. Crimm*, 363 Mo. 731, 253 S.W.2d 149 (1952).

■ A question existed between the parties as to whether or not an assignment of a job contract could be approved after a job commenced. The evidence also reflects meetings between the parties relative to obligations due City-Wide by Scott Construction, and the evidence supports the conclusion reached by the trial court that certain conditions precedent (records, etc., relative to the determination of remaining profitability in the U.S. 40 job) were not met and the referred–to assignment was never consummated. The evidence supports the court's finding and conclusion and point (2) is ruled against appellant.

■ Appellants' final alleged error is subdivided into multiple alleged errors due to the challenge of specific findings and conclusions made by the trial court. These have been set forth above and are disposed of in the same order. As applicable under points (1) and (2) above, the ruling principle is that prescribed in *Murphy v. Carron, supra*. In Point (3)(a), appellant Scott Construction argues it was entitled to 6% interest on the amount set off to it because the parties had stipulated said amount was liquidated. The trial court found and concluded that Scott Construction was entitled to a setoff in the sum of $12,129.44 on the Highway 10 job, but did not allow any interest on said sum. Scott Construction's argument for the allowance of interest is predicated upon the premise that said amount was liquidated. The evidence reveals no certainty of date of this assignment. Further, the amount of the assignment was not liquidated, but rather was in dispute between the parties. The trial court deducted the amount of the setoff from the amount claimed due by respondents. The action by the trial court was not error. Point (3)(b) states that the evidence shows that Scott Construction could not have been responsible for more than half of the liquidated damages assessed on the Highway 10 job ($8,700), and that it was error for the court to have assessed all such damages against Scott Construction. The evidence supports

a finding that 28 days delay was attributable to Scott Construction and hence, the assessment of $4,200 for such damages was within the evidence. The trial court did not err. In Point (3)(c), appellants argue the court erred in failing to include within the setoff to Scott Construction the claim of $1,500 for a field laboratory. The evidence upon this issue was conflicting over what constituted the field lab, and moreover, the evidence conflicted as to whether or not there was any agreement that Scott Construction would be paid for such lab. Appellants argue that the Commission's job specifications called for such lab. In addition to the referred-to specifications, the only other evidence on this point was the allegation of an agreement by Scott Construction and the failure of respondents to recall any such agreement. In such a situation, the demeanor and credibility of the witnesses are deferred to the trier of fact, and it cannot be said the evidence herein fails to support the finding of the trial court. In Point (3)(d), appellants argue the evidence did not support the trial court's finding of the deduction of $4,723.70 as backcharges from the setoff granted Scott Construction, but rather the evidence supported a finding of backcharges in the sum of $4,318.49, which constituted a difference of $405.21. Appellants' contention is supported by the evidence, and the judgment is modified to reflect such credit to the favor of Scott Construction. That such modification is permissible, see *Pope v. Pope*, 520 S.W.2d 634 (Mo.App.1975), *Grundel v. Bank of Craig*, 515 S.W.2d 177 (Mo.App.1974) and Rule 84.14. In Point (3)(e), appellants argue the parties had reached an accord and satisfaction. Appellants' argument on this issue is premised upon a valid assignment of the U.S. 40 job discussed above. As discussed, the evidence does not support the finding that an agreement was consummated. In addition, this issue is raised for the first time upon appeal, having neither been pleaded nor argued before the trial court. The evidence does not support a finding of the necessary elements of an accord and satisfaction. The evidence on this issue centered mainly upon whether an agreement came into existence between the parties. While it is true, as argued by appellants, that pleadings are deemed amended when an issue is tried by express or implied consent of the parties, the record herein does not support the argument that the issue of accord and satisfaction was tried by express or implied consent of the parties. In Point (3)(f), appellants argue that the consent by the Commission to an assignment between the parties constituted a modification of the contract between the parties and as a result thereof, the surety, not having been notified thereof, was discharged upon its bond. Again, appellants' argument is predicated upon the necessity of a valid and consummated assignment. This court has addressed the issue of the lack of a valid and consummated assignment, and it suffices to say that in absence of such a valid assignment, the issue of notice or lack thereof is of no significance, and the trial court's finding that the surety was not discharged upon the bond was correct. In the final point, Point (3)(g), appellants argue the trial court erred in finding that Scott Construction was not entitled to damages arising out of the Highway 10 job or the U.S. 40 job. The record shows that concerning both jobs, the evidence was controverted. The trial court concluded that on both jobs, Scott Construction contributed to the delay, that respondents could not work immediately behind the grading crew of Scott Construction. Upon this record, it cannot be said that the evidence was not substantial to support the trial court's finding that Scott Construction was not entitled to damages as claimed, *Murphy v. Carron*, *supra*.

The record reflects that following the entry of the original judgment, appellants moved for a new trial or in the alternative, for amendment of the findings of facts and conclusions of law. The trial court modified the sums entered on the original judgment to reflect the monetary amount supported by the evidence. The judgment provided for recovery of $43,702.81 related to the Highway 10 job and the sum of $46,-233.96 for the U.S. 40 job.

That portion of the judgment for $46,233.96 is hereby affirmed in all respects. That portion of the judgment for $43,702.81 is hereby corrected to reflect a credit to the favor of appellant Scott Construction in the sum of $405.21 as the evidence relating to the backcharges for the Highway 10 job clearly reflects that the total assessed by the trial court was in error. Pursuant to Rule 84.14, such matter may be corrected to give such judgment as the trial court ought to have entered.

The judgment appealed from is affirmed, but the cause is remanded with directions to enter a new judgment regarding that portion of the judgment for $43,702.81, and that portion of the judgment shall be $43,297.60.

All concur.