649 P.2d 1232

**D. R. CURTIS COMPANY, a Corporation, Plaintiff-Appellant,**

v.

**Norman MASON, Defendant-Respondent.**

No. 13629.

Court of Appeals of Idaho.

Aug. 17, 1982.

William Parsons, Parsons, Smith & Stone, Burley, for plaintiff-appellant.

Harry Turner, Twin Falls, for defendant-respondent.

WALTERS, Chief Judge.

In this action we address the question whether negotiations for the sale of spring wheat show an agreement sufficient to constitute a contract for sale of goods under Idaho's Uniform Commercial Code.

D. R. Curtis Company sued Norman Mason in magistrate court to recover $4,140 for the breach of an alleged oral agreement to sell 9,000 bushels of spring wheat. After trial, the magistrate ruled that there was no oral agreement for the sale of the wheat and granted judgment to Mason. On appeal, the district court affirmed the magistrate's decision. Curtis Company now appeals the determination of the district court. We *affirm*.

Norman Mason telephoned Curtis Company in April 1978 to inquire about the company's advertisement in a local newspaper, promoting soybean production in the Magic Valley area. He spoke with Bob Mai, a grain broker employed by Curtis Company.

The two discussed the soybean market, and then the conversation switched to a discussion of Mason's spring wheat crop. Mai informed Mason of the current wheat market price and Curtis Company's commodity market contract procedure. Mason had already planted that year's spring wheat crop on previously unplanted acreage and he was not certain how productive the land was. He was curious about Curtis Company's contracting procedure whereby a crop was purchased in the spring before a farmer knew what his harvest would be. Mason had always sold his grain after harvest. Mason told Mai he might be interested in contracting to sell his spring wheat crop.

From the information Mason gave Mai about his acreage, Mai defined the terms of an agreement to purchase Mason's crop—price, purchaser's responsibility to pay freight and ship the commodity to Portland, Oregon, delivery date in August or September, and a quantity of 9,000 bushels. Mason asked to see Curtis Company's contract form, and Mai said that he would mail him one. Following the telephone conversation, Mai apparently contacted a purchaser of grain and sold 9,000 bushels of spring wheat, which he believed he had just purchased from Mason by oral agreement.

Mason received a written "confirmation memorandum" signed by Mai, as agent for Curtis Company, a few weeks later. He read the memorandum, but did not fully understand the delivery terms. When he read the 9,000 bushel figure, he decided he could not comply with this quantity provision and did not wish to further negotiate a sale to Curtis Company. He placed the memorandum in the glove box of his pickup, disregarding it until later that summer when another agent of Curtis Company visited him to inquire about a "contract". Mason testified that he never felt he had a contract with Curtis Company.

At the bottom of the memorandum is a clause stating that, "[i]t is understood that the retention of this confirmation without notifying us of error therein, is an acknowledgment and acceptance of contract as above." Mai did not contact Mason again after the original phone call. Apparently, other Curtis Company agents did discuss the "contract" with Mason, but he never expressed his assent to a sale of his wheat to any of them. Finally, in late September, after Mason had received phone calls from Curtis Company agents threatening suit for breach of contract, he returned the one-page memorandum to the company with "Not Accepted" penned on the back side. Curtis Company filed suit.

Both at trial and on appeal, the parties dispute whether there was a contract between them, and, if so, whether the "confirmation memorandum" satisfied the statute of frauds for sale of goods at a price of $500 or more.[1] In regard to the memorandum their arguments focus on the question whether Mason, a farmer who raises and markets the crops he grows, is a merchant within the meaning of the Idaho version of the Uniform Commercial Code,[2] and whether the "merchant" provision of the statute of frauds[3] is applicable. The trial judge resolved the issue of whether there was an

1. I.C. § 28–2–201(1) provides:
   "Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought...."

2. I.C. § 28–2–104 provides:
   (1) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction....

   (3) "Between merchants" means in any transaction with respect to which both parties are chargeable with knowledge or skill of merchants.

3. I.C. § 28–2–201(2) provides:
   Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

agreement between the parties, by finding that there was not. Therefore, he concluded it was unnecessary to address the statute of frauds issue. We agree.

 Under I.C. § 28–2–204(1), to determine whether there is an enforceable contract, the trial court must find that the circumstances of the case, including the parties' conduct, are "sufficient to show agreement." *See Paloukos v. Intermountain Chev. Co.*, 99 Idaho 740, 743, 588 P.2d 939, 942 (1978). Proper formation of a contract for the sale of goods does not require that all terms must be settled. One or more of the terms may be left open and the agreement would not fail for indefiniteness; but the parties must intend to make a contract. I.C. § 28–2–204(3).

In this case, the telephone discussion indicates that both parties were interested in making a contract for the sale of goods. Indeed, Mai apparently felt that an agreement to contract was reached or he would not have sold 9,000 bushels relying on the purchase. But Mason had never before contracted to sell unharvested grain. The evidence shows that he did not agree during the telephone conversation to sell his wheat at that time. Rather, his intention was to explore the possibility of a sale—after some thought and a review of the contract form he expected Mai to send him. The trial court found from the facts of this case that an oral agreement was never reached. There is substantial and competent evidence to support that determination. We will not disturb it on appeal. I.R.C.P. 52(a); *Cougar Bay Co. v. Bristol*, 100 Idaho 380, 597 P.2d 1070 (1979).

A party cannot state an agreement to purchase goods on his own terms, and thereby unilaterally form a contract. The seller must agree to sell the goods. Sending a memorandum of confirmation of purchase does not create an enforceable contract unless there existed a previous oral agreement to be confirmed. I.C. §§ 28–2–201, 28–2–204. This is true notwithstanding an unconditional statement upon the written confirmation form noting that failure to return the form would be deemed an acceptance of the contract. No language in a "confirming memorandum" can create an agreement that did not previously exist. *See* I.C. § 28–2–201. No such agreement existed in this case.

The judgment of the district court which affirmed the judgment of the magistrate is hereby affirmed. Costs to respondent.

BURNETT and SWANSTROM, JJ., concur.