SUMMER & CO., APPELLEE, v. DCR CORPORATION ET AL.,
APPELLEES; TRUSTEES OF OHIO WESLEYAN UNIVERSITY;
APPELLANTS.

[Cite as Summer & Co. v. DCR Corp. (1976),
47 Ohio St. 2d 254.]

(No. 75-952—Decided July 28, 1976.)

*Messrs. Dunbar, Kienzle & Murphey* and *Mr. Alan L. Briggs,* for appellees Summer & Co. and Basic Electric Corp.

*Messrs. Summer, Hoffman & Bowsher, Mr. Robert H. Hoffman* and *Mr. Fred R. Wickham,* for appellee Columbus Air Conditioning Corp.

*Messrs. Crabbe, Brown, Jones. Potts & Schmidt, Mr. William L. Schmidt* and *Mr. Ira O. Kane,* for appellant Trustees of Ohio Wesleyan University.

CELEBREZZE, J. At issue in this cause is the manner in which a vendor of real property who takes a purchase money mortgage from the vendee establishes and preserves his preferential position in order to defeat the claims of

258

persons asserting liens against the property. The Trustees of Ohio Wesleyan University, appellants, maintain that the doctrine of simultaneous seizin applies under such circumstances. Appellants' position is based upon their interpretation of the doctrine which holds that "[w]here a deed of land is executed and, simultaneously therewith, the purchaser gives to the vendor a purchase money mortgage on the property purchased" such exchange establishes the priority of the "purchase money mortgage." They cite the case of *Ward v. Carey* (1883), 39 Ohio St. 361, as authority for their stance, and ominously warn of the dire consequences which may ensue for purchase money mortgage transactions should their views not be sustained by this court. The fears they express may well have been true under the narrow application they ascribe to the decision in *Ward v. Carey, supra.* That case must be read in light of the circumstances of the time. There was no vendor's lien statute. Consequently, in the interest of protecting the rights of the purchase money mortgagee, the court ruled as it did. In that case, one Mary A. McCurdy, on February 26, 1876, agreed to sell certain real estate, which was subject to a mortgage, to secure the payment of her notes to the Warren County Building and Loan Association. The purchaser, Jesse Gustin, agreed to assume and pay the amount due upon the notes and mortgage, and give his notes and mortgage to Mrs. McCurdy for the remainder of the purchase price. Mrs. McCurdy and her husband executed a deed to Gustin, who paid to the Building and Loan Association a part of the amount due from Mrs. McCurdy, and also gave them a note and mortgage which the Association agreed to receive in place of the one made by her. The deed and the mortgage from Gustin were recorded, and the Building and Loan Association released the McCurdy mortgage. Gustin gave Mrs. McCurdy, at the time of her execution of the deed to him, notes and a mortgage for the balance of the purchase money. Subsequently Mrs. McCurdy transferred the notes and mortgage to Joshua Carey. At the January 1876 term of the Court of Common Pleas, Elam Ward and John Custis, partners, recovered a judgment against

Gustin in an action commenced prior to that term, although the date of the judgment actually rendered was March 14, 1876. It was not until 1882, when Carey sought to foreclose the McCurdy mortgage, that the question, regarding the priority of the judgment or the mortgage liens, arose. At the time, a statute provided that the lands of a judgment debtor "shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered." The court, however, found "that a mortgage given to secure the payment of purchase money, executed simultaneously with the deed to the purchaser, is superior to the lien of a judgment against the mortgagor, or any claim against him." The court found that the seizin of the purchaser, Gustin, was instantaneous only, and did not vest in him a title to which a judgment lien could attach in the time frame of the transaction. Succinctly stated, the court found that the only interest Gustin ever held or acquired was "the title to the land subject to the mortgages." (Emphasis added.) Further, it should be noted that the question involved in *Ward* was the priority of a judgment lien under a statute in effect at that time. Here, we are involved with mechanic's liens and the statutes directed thereto.

Appellants also cite the case of *Romito Bros.* v. *Flannery* (1974), 40 Ohio St. 2d 79, which followed the prior decision of this court in *Mahoning Park Co.* v. *Warren Home Development Co.* (1924), 109 Ohio St. 358. In both of those cases the party who contracted for the labor and material furnished was the *lessee* of the property. Mechanic's liens filed in both cases were found to attach only to the interest of the party who contracted for the work and that interest in both cases was a leasehold. The court found, in both cases, that the right to a mechanic's lien was created by statute; and that under the applicable Code section, R. C. 1311.02 (formerly G. C. 8310), before one who furnishes labor or material may enforce a mechanic's lien, he must show that such work was performed pursuant to a contract, because the lien applies only to the interest of the one with whom the contract was made. In other words, the contractor's mechanic's lien extends only to the leasehold inter-

est of the party who ordered the work done.

In the instant case, we are dealing with the interest of DCR, under the terms of the purchase agreement and the deed and mortgage executed in pursuance thereof, and the mechanic's liens perfected by the contractors who performed work and furnished materials at the express order of DCR. Some years after the pronouncement referred to in *Ward* v. *Carey, supra,* the General Assembly, in 1929, enacted G. C. 8543-1, which became R. C. 5301.26, effective October 1, 1953. R. C. 5301.26 provides:

"As between the vendor and vendee of land the vendor shall have a lien for so much of the purchase money as remains unpaid. Such lien shall not be effective as against a purchaser, mortgagee, judgment creditor, or other encumbrancer, unless there is a recital or a reservation of the lien in the deed, or in some instrument of record executed with the same formalities as are required for the execution of deeds and mortgages of land. The vendor waives his lien by taking a mortgage for any unpaid purchase money on the land conveyed or any part thereof, and the filing for record of such a mortgage with the county recorder of the county in which said land is located shall be constructive notice of the waiver of the vendor's lien."

A thorough examination of the record, including the deed and purchase money mortgage, both duly recorded by the appellants, reveals no such "recital or a reservation" of a vendor's lien. Further, no document has been produced or is alleged to exist that would preserve such vendor's lien rights as are defined by the statute. And finally, the mortgage of record, which, according to the terms of the purchase agreement, represents the "balance to be paid semi-annually over [a] period of five years, at interest at 8% [with] buyer to furnish note cosigned by Donald C. Ritchey and mortgage in form satisfactory to seller" does not contain such a "recital or a reservation." It would appear to the court that this falls squarely within the language defining the waiving of a vendor's lien set forth in the last sentence of R. C. 5301.26. Appellants, in their brief, wisely decline to claim the application of this section. The impli-

cations of eschewing this protective cover are too onerous to mention. The appellees and the reviewing court took the view that the application of R. C. 5301.26 was proper in this case. The Court of Appeals stated in its decision:

"Since the enactment and effective date of Section 5301.26, Rev. Code (GC 8543-1, 113 O. L. 61) (1929), defining a vendor's lien for purchase money of land, it is our finding that the doctrine of simultaneous seizin cannot be made applicable in Ohio in determining priority between mechanics' liens and a vendor's mortgage lien."

The appellees further cite R. C. Chapter 1311, entitled "Liens," in support of their position.

R. C. 1311.01(A) defines an "owner" as follows:

" 'Owner,' 'part owner,' or 'lessee' includes all the interests either legal or equitable, which such person may have in the real estate upon which the improvements contemplated under such sections are made, including the interests held by any person under contracts of purchase, whether in writing or otherwise."

DCR held such an "interest" in the subject property by virtue of the purchase agreement, which, by appellants' admission, was discussed orally in July or August 1970, and executed on August 31, 1970.

R. C. 1311.02 goes on to describe the extent of "ownership" on which a mechanic may rely by providing that the lien applies to:

" * * * and upon the interest, leasehold, or otherwise, of the owner, part owner, or lessee, in the lot or land upon which they stand * * *, *to the extent of the right, title, and interest of the owner, part owner, or lessee, at the time the work was commenced or materials were begun to be furnished by the contractor, under the original contract, and also to the extent of any subsequent acquired interest of any such owner, part owner, or lessee.*" (Emphasis added.)

The facts in the record clearly reveal that the first labor and material was furnished on the instant premises at the latest on August 9, 1970. The work was furnished at the request of DCR, whose only interest at that time was a pro-

posed agreement. However, that interest ripened into the receipt of a fee title under the terms of a special warranty deed executed October 9, 1970; that involved the following language:

. . . "TO HAVE AND TO HOLD said premises with all the privileges and appurtenances thereunto belonging to said D. C R CORPORATION, its successors and assigns forever.

. "In accepting this conveyance, and as a part of the consideration therefor, the grantee, for itself and its successors and assigns, hereby covenants and agrees to and with the said grantor, its successors and assigns, that the above-described real estate shall not be used for manufacturing or industrial purposes from and after a date three years subsequent to the date of execution of this special warranty deed, provided research and development operations shall be permitted.

"And the said THE TRUSTEES OF THE OHIO WESLEYAN UNIVERSITY, for itself and its successors and assigns, does hereby covenant with said D C R CORPORATION, its successors and assigns, that it is lawfully seized of the premise aforesaid; that said premises are free and clear of all liens and encumbrances created by, through or under the grantor herein, except easements, conditions and restrictions of record, the aforesaid restriction and taxes and special assessments for the year 1970 and thereafter, which grantee assumes and agrees to pay, and that said grantor will warrant and defend the same with the appurtenances unto the said D C R CORPORATION, its successors and assigns, against the lawful claims and demands of all persons whomsoever claiming by, through or under the said grantee, except as herein set forth, but against none other."

Finally, appellees propose that the decision in *Wayne Building & Loan Co.* v. *Yarborough* (1967), 11 Ohio St. 2d 195, is controlling in this case. Although the facts in *Yarborough* involve a dispute between vendee lienholders, a purchase money mortgagee, a construction loan mortgagee and mechanic's lienholders, as opposed to the instant case

which only involves a conflict between a purchase money mortgagee and mechanic's lienholders, the court's ruling in that case is not so obtuse as to make it inapplicable here. This court determined that a purchase money mortgage, not filed for record until after the mechanic's lienholders had furnished labor and materials and not in compliance with R. C. 5301.26, does not take priority over the rights of the mechanic's lienholders. The court cited the case of *Rider v. Crobaugh* (1919), 100 Ohio St. 88, which contains the following language in the first three paragraphs of the syllabus:

"1. The lien of a mortgage, although given for the avowed purpose of improving real estate, and not containing the covenants provided in Section 8321-1, General Code (106 O. L., 531), is prior to mechanics' and materialmen's liens if such mortgage was filed for record before work was begun or material furnished on the improvement.

"2. Separate contracts were made for building construction and work obviously begun thereon before the record of a nonconstruction mortgage; later, other liens were perfected for labor done and materials furnished under contracts made subsequent to such recording. Under the provisions of Section 8321, General Code (103 O. L., 376), all such liens are preferred, without priority, to a mortgage recorded subsequent to the commencement of said construction.

"3. Section 8542, General Code, giving mortgages a lien from the date of filing, is still effective, but it must yield to a later act giving mechanics and materialmen preference over a mortgage filed for record subsequent to the commencement of the improvement."

*Rider* was followed by this court in *Holgate State Bank v. Gauggel* (1966), 6 Ohio St. 2d 256, a *per curiam* opinion containing the following language:

"Section 5301.23, Revised Code, provides that 'all mortgages properly executed shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated, and take effect from the time they are delivered to such recorder for record.'

"The plaintiff's mortgage, having been recorded before any work was done or material furnished, takes priority over the materialmen's liens. * .* *''

The most crucial language in *Wayne Building & Loan Co.* v. *Yarborough, supra,* appears at pages 208, 209:

"It is incumbent upon the seller of real property who desires to secure priority over mechanics' liens for his claim for unpaid purchase money to either reserve a vendor's lien in his conveyance and not waive the same, or to record his purchase money mortgage promptly, and before the visible commencement of work upon the mortgaged premises, in the case of intervening mechanics' lienors. *Cf.* 36 Ohio Jurisprudence 2d 563, Mechanics' Liens, Section 112. Having failed to avail itself of these means of securing priority over mechanics' liens, Sauter [purchase money mortgagee] must be held subsequent in priority thereto."

This court, in *Yarborough,* thus recognized only two methods by which a vendor of real property may secure priority for the unpaid purchase price over mechanic's lienholders. First, the vendor may reserve a lien in the deed or some other instrument of equal execution and not statutorily waive this right; second, the vendor may record its purchase money mortgage promptly, *i. e.,* before any visible work has commenced upon the mortgaged premises. Appellants herein did not comply with either of those remedies, but rather sought to interpose the archaic (in view of statutory advancements) device of simultaneous seizin.

The Court of Appeals, in effect, held that since the provisions contained within R. C. 1311.01 *et. seq.,* and R. C. 5301.26 postdated the decision of this court in *Ward* v. *Carey, supra,* any portion of that former decision inconsistent with the applicable statutes must be overruled. We agree with the Court of Appeals.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.