CAROLINA BUILDERS CORPORATION v. HOWARD-VEASEY HOMES, INC.,
    FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF RALEIGH, DAN
    C. AUSTIN, AND V. WATSON PUGH, D/B/A TAP COMPANY, A NORTH CARO-
    LINA GENERAL PARTNERSHIP, HERMAN WOLFF, JR., ATTORNEY IN FACT FOR
    V. WATSON PUGH, AND RURAL PLUMBING AND HEATING, INC.

CAROLINA BUILDERS CORPORATION v. HOWARD-VEASEY HOMES, INC.,
    FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF RALEIGH, DAN
    C. AUSTIN, AND V. WATSON PUGH, D/B/A TAP COMPANY, A NORTH CARO-
    LINA GENERAL PARTNERSHIP, HERMAN WOLFF, JR., ATTORNEY IN FACT FOR
    V. WATSON PUGH, AND RURAL PLUMBING AND HEATING, INC. AND
    CHEROKEE BRICK OF NORTH CAROLINA

No. 8410SC323

(Filed 15 January 1985)

1. **Laborers' and Materialmen's Liens § 3— building supplies—sufficiency of evidence of contract to purchase**

   Evidence of an oral agreement between plaintiff seller of building supplies and defendant builder that defendant would buy everything that plaintiff supplied so long as plaintiff would sell to him and his company, and the delivery and acceptance of materials over a five-month period, coupled with invoicing and payment, was sufficient to show a contract necessary for the perfecting of a statutory lien on real property pursuant to G.S. 44A-8.

2. **Laborers' and Materialmen's Liens § 3— deed signed but not delivered or recorded—ownership requirement of lien statute met**

   Where defendant land development partnership signed a deed conveying two lots to defendant builder for valuable consideration on 12 June 1981, plaintiff first furnished building materials to the lots on 19 June 1981, and on 14 July 1981 the deed was executed, recorded and delivered and defendant became the legal owner of the property, defendant builder's equitable interest at the time materials were first furnished by plaintiff followed by his subsequent legal interest satisfied the ownership requirement of G.S. 44A-8, the materialmen's lien statute.

3. **Laborers' and Materialmen's Liens § 9— intervening construction loan deed of trust—priority of materialmen's lien over purchase money deed of trust**

   Defendant savings and loan association's intervening construction loan deed of trust defeated the priority that defendant's purchase money deed of trust ordinarily would have had over plaintiff's materialmen's lien under the doctrine of instantaneous seisin since defendant authorized the recording of the savings and loan association's construction loan deed of trust one minute prior to the recording of its own purchase money deed of trust, and the savings and loan could have required defendant builder to obtain lien waivers but failed to do so.

Carolina Builders Corp. v. Howard-Veasey Homes, Inc.

APPEAL by defendant TAP Company from *Brannon, Judge.* Judgment entered 14 November 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 28 November 1984.

Defendant TAP Company (defendant) appeals from a judgment awarding plaintiff's liens priority status on claims against lots owned by Howard-Veasey Homes, Inc. over defendant's purchase money deeds of trust.

*Russell & Brewer, P.A., by Harold E. Russell, Jr., and Joyce A. Hamilton, and Joslin, Culbertson & Sedberry, by William Joslin, for plaintiff appellee.*

*Boyce, Mitchell, Burns & Smith, P.A., by G. Eugene Boyce and Susan K. Burkhart, for defendant TAP Company, appellant.*

WHICHARD, Judge.

Defendant is a land development partnership. Plaintiff sells building supplies. In April or May, 1981, defendant orally agreed to sell and Veasey Homes, Inc. (Veasey) agreed to buy two lots owned by defendant. On 12 June 1981 defendant signed a deed conveying the lots to Veasey. On 14 June 1981 Veasey applied for building permits and on 15 June 1981 Veasey began clearing the lots. On 19 June 1981 plaintiff first supplied building materials to lot 51; on 8 July 1981 plaintiff first supplied such materials to lot 50.

On 13 July 1981 Veasey executed construction loan deeds of trust to First Federal Savings & Loan Association of Raleigh (First Federal) and deeds of trust for the balance of the purchase price to defendant. The closing attorney recorded the deeds to both lots on 14 July 1981 at 3:55 p.m. He also recorded the construction loan deeds of trust on 14 July 1981 at 3:55 p.m. He recorded defendant's purchase money deeds of trust on the same day at 3:56 p.m. The attorney testified that "[c]ustomarily, the attorney records any construction loan deed of trust prior to any purchase money deed of trust. This procedure is aimed at giving the construction lender the first priority, as required by title insurance companies."

Plaintiff last furnished materials to lot 50 on 28 October 1981. It last furnished materials to lot 51 on 9 November 1981. On 19

February 1982, pursuant to G.S. Ch. 44A, plaintiff filed liens against the two lots in the amounts of $9,540.72 and $7,542.13, respectively, for materials furnished.

Plaintiff then commenced this action requesting priority as to proceeds of foreclosure proceedings on the lots. On 31 August 1982 plaintiff voluntarily dismissed the action against First Federal. The court assigned plaintiff priority status over the purchase money security interest of defendant and enforced plaintiff's liens against the property.

Defendant appeals; we affirm.

I.

To perfect a statutory lien on real property plaintiff must meet the requirements of G.S. Ch. 44A, Art. 2. The following provision is pertinent:

> Any person who . . . furnishes materials pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a lien on such real property to secure payment of all debts owing for . . . material furnished pursuant to such contract.

G.S. 44A-8. An owner under the statute is defined as "a person who has an interest in the real property improved and for whom an improvement is made and who ordered the improvement to be made." G.S. 44A-7(3). " 'Owner' includes successors in interest of the owner and agents of the owner acting within their authority." *Id.*

Defendant raises three questions which we answer affirmatively: (1) Did plaintiff supply materials to Veasey pursuant to a contract as required by G.S. 44A-8? (2) Does Veasey meet the statutory definition of an owner as defined in G.S. 44A-7(3)? (3) Does First Federal's intervening construction loan deed of trust defeat the priority that defendant's purchase money deed of trust ordinarily would take over plaintiff's lien?

II.

[1] As to the first issue, the court made the following findings of fact:

5. That Howard-Veasey Homes, Inc., by and through its duly authorized corporate officer, Bob Veasey, entered into a contract with plaintiff . . . for the furnishing of building materials to Lot 50 . . ., and on July 8, 1981, said materials were first furnished to said lot and, pursuant to its contract with . . . Veasey . . ., plaintiff continued to furnish building materials until October 28, 1981.

. . . .

7. That Howard-Veasey Homes, Inc., by and through its duly authorized corporate officer, Bob Veasey, entered into a contract with plaintiff . . . for the furnishing of building materials to Lot 51 . . ., and on June 19, 1981, said materials were first furnished to said lot, and pursuant to its contract with . . . Veasey . . ., plaintiff continued to furnish building materials until November 9, 1981.

The court's findings of fact are conclusive if supported by any competent evidence. *Williams v. Insurance Co.*, 288 N.C. 338, 342, 218 S.E. 2d 368, 371 (1975); *Spivey v. Porter*, 65 N.C. App. 818, 819, 310 S.E. 2d 369, 370 (1984).

In support of its contention that plaintiff and Veasey had not entered into a contract, defendant cites the following testimony by Veasey: "I made it clear that . . . I would buy everything that [plaintiff] supplied so long as they would sell it to me and my company. . . . That is the only supplier for building materials that I have . . . ."

Defendant also cites testimony by Veasey that there was no agreement concerning the price of the material delivered to the lots; plaintiff could raise the price of brick, nails, or lumber. This testimony, rather than supporting defendant's position, is sufficient competent evidence to support the court's findings.

The contract between plaintiff and Veasey is a contract for the sale of goods, governed by the Uniform Commercial Code (UCC), G.S. Ch. 25, Art. 2. Under the Code a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. G.S. 25-2-204(1). The delivery and ac-

ceptance of materials from 19 June 1981 through 9 November 1981, coupled with invoicing and payment, is conduct by the parties which recognizes the existence of a contract.

Even though one or more terms are left open, a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for awarding an appropriate remedy. G.S. 25-2-204(3). If parties so intend, they can conclude a contract for sale even though the price is not settled; in such a case the price is a reasonable price at the time for delivery. G.S. 25-2-305(1). A price to be fixed by the seller means a price to be fixed in good faith. G.S. 25-2-305(2). Thus the open price term is no impediment to the court's finding.

Further, the Code provides for contract terms which measure quantity by the output of the seller or the requirements of the buyer. G.S. 25-2-306(1). The Official Comment to this provision states the following:

> Under this Article, a contract for output or requirements is not too indefinite since it is held to mean the actual good faith output or requirements of the particular party. Nor does such a contract lack mutuality of obligation since . . . the party who will determine quantity is required to . . . conduct his business in good faith and according to commercial standards of fair dealing in the trade. . . . Reasonable elasticity in the requirements is expressly envisaged . . . .

G.S. 25-2-306, Official Comment 2. (See White and Summers, *Uniform Commercial Code* 12-14 (1980), for the weight to which Official Comments are entitled.) Veasey's testimony that he would buy everything plaintiff supplied so long as plaintiff would sell to him and his company is evidence of an output and requirements contract.

Defendant's contention that plaintiff and Veasey had "at most, a non-binding agreement to buy and sell materials on open account, lacking all essential terms" is without merit. We hold that the agreement between plaintiff and Veasey satisfies the contract requirement under G.S. 44A-8 and that the evidence was sufficient for the court so to find.

### III.

[2]  For a materialman's lien to arise, G.S. 44A-8, *supra*, there must be a contract between a materialman and the owner of the improved premises. To qualify as an owner one must have "an interest in the real property improved" and be a person "for whom the improvement [was] made and who ordered the improvement to be made." G.S. 44A-7(3).

The purpose of the materialman's lien statute is to protect the interest of the supplier in the materials it supplies; the materialman, rather than the mortgagee, should have the benefit of materials that go into the property and give it value. *See* 1 L. Jones, *A Treatise on the Law of Mortgages of Real Property* Sec. 603 at 833-34 (8th ed. 1928). *See also* Douglass, *Materialmen's Liens in North Carolina: The Problem of the Overeager Purchaser*, 61 N.C. L. Rev. 926, 928 n. 12 (1983). To implement this purpose, courts should construe the statute so as to further the legislature's intent. *Greene v. Town of Valdese*, 306 N.C. 79, 85, 291 S.E. 2d 630, 634 (1982). They should construe a remedial statute to advance the remedy intended. *Shipyard, Inc. v. Highway Comm.*, 6 N.C. App. 649, 651-52, 171 S.E. 2d 222, 224 (1969). We believe our materialman's lien act, G.S. Ch. 44A, Art. 2, Pt. 1, is remedial in nature and should be construed to advance the legislative intent in enacting it. We construe G.S. 44A-7, which defines "owner," on that basis.

The precise question of whether a vendee who orders commencement of work before acquiring legal title is an owner within the meaning of the statute appears to be one of first impression in this jurisdiction. Most jurisdictions agree that an enforceable executory contract for the sale of land provides sufficient equitable interest to give the vendee ownership status for the purpose of statutory materialmen's liens. Douglass, *supra* at 927 n. 9, 929-30 n. 21, 933 n. 43 citing, *e.g.*, *Sontag v. Abbott*, 344 P. 2d 961 (Colo. 1959); *Service Lumber & Supply Co. v. Cox*, 123 So. 820 (Fla. 1929); *Northwestern Nat'l Bank v. Metro Center*, 303 N.W. 2d 395 (Iowa 1981); *Noll v. Graham*, 27 P. 2d 277 (Kan. 1933); *Chicago Lumber Co. v. Fretz*, 32 P. 908 (Kan. 1893); *Sullivan v. Thomas Org., P.C.*, 276 N.W. 2d 522 (Mich. 1979); *Summer & Co. v. DCR Corp.*, 47 Ohio St. 2d 254, 351 N.E. 2d 485 (1976); *Lemire*

*v. McCollum*, 425 P. 2d 755 (Or. 1967); *Westfair Corp. v. Kuelz*, 280 N.W. 2d 364 (Wis. Ct. App. 1979).

In two cases decided under the former materialman's lien statute, G.S. Ch. 44, Art. 1 (repealed 1969), our appellate courts assumed, without deciding, that a purchaser with only an equitable interest had the power to cause a lien to attach to the property. *See Supply Co. v. Rivenbark*, 231 N.C. 213, 56 S.E. 2d 431 (1949) (purchase money deed of trust, executed in same transaction with deed, superior to lien for material furnished while purchaser was lessee with option to purchase; implicit that lien would have had priority but for purchase money deed of trust); *Pegram-West, Inc. v. Homes, Inc.*, 12 N.C. App. 519, 184 S.E. 2d 65 (1971) (lien for materials furnished before owner's deed recorded superior to deed of trust not recorded as part of same transaction with deed). In *Supply Co.* and *Pegram-West* the Courts thus impliedly assumed that a prospective purchaser with an equitable interest was an owner under the prior statute.

Here the court reached the following conclusion of law:

10. That North Carolina General Statute 44A, Article 2, allows materialmen to [acquire] valid enforceable lien rights relating back in time to the first furnishing [of materials] under circumstances where the person or entity with whom he contracted did not at that time have legal title but later did acquire legal title.

This conclusion appears tantamount to stating that any subsequently acquired interest will support a materialman's lien even if no enforceable interest existed when the contract was made or the work commenced. While that may be an appropriate rule, *see* Douglass, *supra* at 934, it goes beyond the facts here and encompasses factual situations[1] which are not before this Court.

Here the court found as a fact "[t]hat [Veasey] agreed to purchase, and [defendant] agreed to sell in April or May of 1981, Lots

---

1. *E.g.*, where a party with mere open, undisputed possession, without provable oral or written contract to purchase, later acquires legal title, *see Chicago Lumber Co. v. Fretz*, 32 P. 908 (Kan. 1893); or where a potential purchaser with an unenforceable oral contract later acquires legal title, *see Lemire v. McCollum*, 425 P. 2d 755 (Or. 1967). *Contra Service Lumber & Supply Co. v. Cox*, 123 So. 820 (Fla. 1929) (test for interest sufficient to constitute ownership is transferability).

Carolina Builders Corp. v. Howard-Veasey Homes, Inc.

50 and 51 . . . ." Defendant has not excepted to this finding. If supported by any competent evidence, as this is, the court's findings of fact are conclusive on appeal. *Spivey v. Porter*, 65 N.C. App. at 819, 310 S.E. 2d at 370. Both parties agree that defendant and Veasey entered into an oral agreement under which defendant would convey lots 50 and 51 to Veasey.

As an executory contract for the sale of land, this agreement is subject to the statute of frauds and shall be void unless some memorandum or note sufficient to satisfy the statute be put in writing and signed by the party to be charged therewith. G.S. 22-2. Defendant here signed a deed conveying lots 50 and 51 to Veasey for valuable consideration on 12 June 1981. The deed is sufficiently definite as to the terms of the contract, the names of the vendor and vendee, and a description of the land to be conveyed to satisfy G.S. 22-2. *See Smith v. Joyce*, 214 N.C. 602, 604, 200 S.E. 431, 433 (1939). With the deed as a sufficient memorandum signed by defendant, the oral agreement between defendant and Veasey constitutes an enforceable contract within the provisions of G.S. 22-2. *Id.* As an enforceable contract for the sale of land it is subject to specific performance in equity. *See* 71 Am. Jur. 2d *Specific Performance* Sec. 112 at 143-45 (1973).

Thus, as of 12 June 1981 Veasey had an equitable interest in the property. Plaintiff first furnished materials to the lots on 19 June 1981, after Veasey had acquired his equitable interest. On 14 July 1981 the deed was executed,[2] recorded, and delivered and Veasey became the legal owner of the property. We hold that Veasey's equitable interest at the time materials were first furnished by plaintiff followed by his subsequent legal interest satisfies the ownership requirement under G.S. 44A-8. To the extent that conclusion of law number ten exceeds this holding, based upon the discrete facts presented, it is disavowed. Otherwise, we find it correct.

IV.

[3] A materialman's lien relates back and takes effect from the time of the first furnishing of materials at the site of the improve-

2. *See, e.g., Barnes v. Aycock*, 219 N.C. 360, 362, 13 S.E. 2d 611, 612 (1941) ("The delivery of a deed, a transmutation of the possession, is an essential ceremony to the complete execution of it.").

ment by the person claiming the lien. G.S. 44A-10. While the statutory language does not indicate the precise moment of attachment, it does indicate an order of priority between competing lien claimants. That priority can be defeated by the application of the doctrine of instantaneous seisin, which defendant urges us to apply. The doctrine provides that when a deed and a purchase money deed of trust are executed, delivered, and recorded as part of the same transaction, the deed of trust attaches at the instant the vendee acquires title and constitutes a lien superior to all others. *E.g., Supply Co.*, 231 N.C. 213, 56 S.E. 2d 431. It would thus subordinate a previously existing materialman's lien. The policy supporting the doctrine is that a vendor who parts with property and supplies the purchase price does so on the basis of having a first priority security interest in the property. The vendor who advances purchase money relies on the assurance that he or she will be able to foreclose on the land if the purchase price is not repaid. It is thus equitable and just that the vendor have a first priority security interest and be protected from the possibility of losing both the land and the money in the transaction. *See* Urban and Miles, *Mechanics' Liens for the Improvement of Real Property: Recent Developments in Perfection, Enforcement, and Priority*, 12 Wake Forest L. Rev. 283, 329-30 (1976); Douglass, *supra*, at 938. Here, however, the vendor (defendant) has not so relied.

Defendant contends that the deed and the purchase money deed of trust were executed, delivered, and recorded as part of a continuous transaction, beginning on 10 July 1981 at the offices of First Federal and ending on 14 July 1981 when the deed and deeds of trust were recorded. The evidence and custom and usage in the trade, however, indicate a contrary intent.

Defendant authorized the recording of First Federal's construction loan deeds of trust one minute prior to the recording of its own purchase money deed of trust. As the closing attorney testified, *supra*, defendant followed a convention "aimed at giving the construction lender the first priority as required by title insurance companies." We find no merit in defendant's argument that the intervening construction loan does not defeat application of the doctrine of instantaneous seisin and that under the doctrine defendant's purchase money deed of trust displaces First Federal's deed of trust along with plaintiff's liens. Here, unlike in

*Supply Co.*, 231 N.C. 213, 56 S.E. 2d 431, or in any other case that defendant has cited or that we have found, defendant has deliberately accepted a secondary position behind First Federal's construction loan deed of trust.

As an indication of the parties' intent the lapse in recording time destroys the fiction of the same transaction necessary to sustain the doctrine of instantaneous seisin. It does so because it is a convention expressly designed for that purpose, to give the construction lender priority over the purchase money deed of trust. Defendant thus cannot claim that by virtue of instantaneous seisin it has subordinated plaintiff's previously accruing materialman's liens.

The court reached the following conclusions of law:

7. That in neither . . . *Pegram-West, Inc. vs. Hanes,* 12 NC App. 519, 184 SE 2nd 65 (1971) nor *Supply Co. vs. Riverbark,* 231 NC 213, 56 SE 2nd 431 (1949), both well-recognized authorities in North Carolina on the principle of "instantaneous seisin", did the facts include the intervention of a construction loan which was not purchase money in nature. The doctrine of "[i]nstantaneous seisin" has been applied only to purchase money transactions. In neither case was there consent by a purchase money mortgage holder to the intervention of a construction loan.

. . . .

9. Both First Federal and [defendant] had every means available to them to cut-off the lien rights of the lien claimants in that both, with actual or constructive knowledge of the commencement of construction, could have required lien waivers at closing as opposed to the non-commencement affidavits which First Federal secured and knew or should have known to be false.

We agree, and we thus hold that First Federal's intervening construction loan deed of trust defeats the priority that defendant's purchase money deed of trust ordinarily would have over plaintiff's lien under the doctrine of instantaneous seisin.

This holding follows the trend in the law to protect the materialman's interest. "[Lien] statutes are designed to protect

laborers and materialmen who expend their labor and materials upon the buildings of others. Insofar as these statutes afford new remedies, they are liberally construed to effect the legislative purpose . . . ." *Lemire,* 425 P. 2d at 759. As the trial court concluded, the vendor and the construction lender have the resources and the bargaining power to require the vendee to obtain lien waivers from material suppliers or to obtain title insurance as here. *See* R. Kratovil, Modern Mortgage Law and Practice, Sec. 214 at 138, 141 (1972). We thus perceive no reason to extend the doctrine of instantaneous seisin to protect, at the expense of the materialman, the holder of a purchase money security interest who, by consenting to give a construction lender's security an intervening priority over his or her own, has indicated an intent not to be so protected.

### V.

In summary, we find that plaintiff had a contract with the owner of the property within the meaning and intent of those terms as used in G.S. 44A-8. Materials furnished pursuant to that contract gave rise to a statutory materialman's lien which takes precedence over a purchase money deed of trust when there is an intervening construction loan deed of trust.

Affirmed.

Judges JOHNSON and EAGLES concur.