907 F.2d 1139
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SOUTHEASTERN SAVINGS & LOAN ASSOCIATION and TFM, Inc.,
Plaintiff-Appellant,
v.
RENTENBACH CONSTRUCTORS, INC., Defendant-Appellee.
RENTENBACH CONSTRUCTORS, INC., Plaintiff-Appellant,
v.
SOUTHEASTERN SAVINGS & LOAN ASSOCIATION and TFM, Inc.,
Defendant-Appellee.
 Nos. 89-2466, 89-2477.
 United States Court of Appeals, Fourth Circuit.
 Argued April 3, 1990.
Decided June 19, 1990.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, Chief District Judge. (CA-89-314-5-CIV)
 William H. McCullough, Adams, McCullough & Beard, Raleigh, N.C., (argued), for appellants; Lisa M. Nieman, Adams, McCullough & Beard, Raleigh, N.C., on brief.
 Benjamin F. Davis, Jr., Smith, Helms, Mulliss & Moore, Greensboro, N.C. (argued), for appellee; Diane Bishop, Linda S. Bellows, Smith, Helms, Mulliss & Moore, Greensboro, N.C., on brief.
 E.D.N.C.
 AFFIRMED.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and MARVIN J. GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal stems from a dispute between two creditors of a bankrupt limited partnership over the priority status of their liens on the partnership's primary asset--a historic building in Raleigh, North Carolina. The bankruptcy court held that the materialmen and laborers' lien of Rentenbach Constructors had priority over the deed of trust filed by the Southeastern Savings & Loan Association and TFM, Inc.,[1] but that Rentenbach had waived its lien with regard to a portion of the construction debt. On appeal by Southeastern and cross-appeal by Rentenbach, the district court affirmed the decision of the bankruptcy court. We also find the parties' contentions to be without merit and affirm.
 
 
 2
 * Facts
 
 
 3
 This case presents a simple issue embedded in a complex factual setting. In July 1985, Southeastern agreed to loan $3,250,000 to a North Carolina limited partnership called Capital Club Associates (CCA) to finance the renovation of the Capital Club building. CCA executed a deed of trust on the building to secure the loan. The deed was signed by Allan Koch on behalf of Urban Properties,[2] the general partner of CCA, and recorded on August 5, 1985.
 
 
 4
 However, on August 5, CCA did not own the Capital Club; it was still owned by Urban Properties.[3] In fact, CCA's certificate of limited partnership was not filed until August 2, and the deed conveying the Capital Club from Urban Properties to CCA was not recorded until August 14, 1985.
 
 
 5
 In the meantime, CCA executed a contract with Rentenbach as general contractor on July 30, 1985. Rentenbach began work on August 19, 1985, and completed work on February 26, 1987. On March 10, 1987, Rentenbach timely filed a claim of materialmen and laborers' lien for amounts due under the contract.[4] The deed of trust from CCA to Southeastern was not rerecorded until May 20, 1987.
 
 
 6
 CCA petitioned for bankruptcy on August 17, 1987, and Rentenbach subsequently filed this proceeding in the bankruptcy court to establish the priority of its lien. The district court affirmed the bankruptcy court's findings and holdings, ruling that CCA did not have title to the building when the deed of trust was originally recorded in August 1985 and that Southeastern did not record a valid deed of trust until May 1987, after Rentenbach's materialmen and laborers' lien had been recorded and perfected.
 
 
 7
 In this appeal, Southeastern challenges the district court's holding that Rentenbach had a valid lien which had priority over Southeastern's deed of trust. Both Southeastern and Rentenbach contend that the court erred in determining the amount of Rentenbach's lien.
 
 II
 Southeastern's Original Filing
 
 8
 Southeastern submits that its original deed of trust was properly recorded and therefore superior to Rentenbach's lien. Southeastern urges that this follows even though CCA did not have title to the Capital Club when the deed of trust was recorded on August 5, because Rentenbach had notice of Southeastern's interest in the building. This argument is without merit. Under North Carolina law, even actual notice of a prior recorded conveyance outside the chain of title of a common grantor does not defeat the interest of a lien creditor who is the first to register his interest after the grantor acquires title to the property. Schuman v. Roger Baker & Assocs., 70 N.C.App. 313, 315-17, 319 S.E.2d 308, 309-10 (1984); see also Simmons v. Quick Stop Food Mart, 307 N.C. 33, 42, 296 S.E.2d 275, 281 (1982).
 
 
 9
 Southeastern seeks to avoid this result by invoking the rule that every partner is an agent of a partnership. N.C.Gen.Stat. Sec. 59-39(a). Southeastern asserts that, because Allan Koch was the general partner of Urban Properties and Urban Properties was the general partner of CCA, Koch could execute a deed of trust that would create a lien within the chain of title and give Southeastern priority over Rentenbach's lien. However, overlapping partnerships cannot be used to cure a basic title defect. While Koch could unquestionably act on behalf of Urban Properties, he could not act on behalf of CCA to encumber property which CCA did not possess. We agree with the district court that Southeastern's approach would
 
 
 10
 put a whole new gloss on title searches; that is, appellant would demand title searches be conducted in any number of directions depending on the existence of partnership arrangements. The overlay of partnership law is inappropriate here. Principles of partnership law do not aid in the resolution of this dispute and do not control its outcome....
 
 III
 Rentenbach's Lien
 
 11
 Southeastern argues that, even if its original deed was out of the chain of title, Rentenbach's lien was fatally defective. Southeastern first claims that Rentenbach waived any lien by agreeing to this language in Article 9.3.3 of the construction contract:
 
 
 12
 The Contractor warrants that title to all Work, materials and equipment covered by an Application for Payment will pass to the Owner either by incorporation in the construction or upon the receipt of payment by the Contractor, whichever occurs first, free and clear of all liens, claims, security interests or encumbrances....
 
 
 13
 The district court concluded that such a provision was intended to cover only the liens of materialmen and subcontractors and not the lien of a primary contractor like Rentenbach. The district court also reasoned that, if interpreted as a complete waiver of Rentenbach's lien rights, the clause would be unenforceable under North Carolina law. See N.C.Gen.Stat. Sec. 44A-12(f). We agree. See generally United States v. Kimbell Foods, 440 U.S. 715, 740 (1979) (deference on state law questions to interpretation of district judge sitting in that state).
 
 
 14
 Southeastern next makes a "what is good for the goose is good for the gander" argument. Southeastern urges that if it cannot rely on the August 14 recording of the deed conveying ownership of the Capital Club building from Urban Properties to CCA to establish the priority of the Southeastern deed of trust, then Rentenbach should not be allowed to rely on that recording to establish its lien against CCA as the owner. Southeastern's argument ignores the distinctions between the requirements for perfecting a lien and the effect of registering a deed under North Carolina law.[5] The fact that CCA was the Capital Club's owner for purposes of the lien statute has no bearing on the question of whether CCA's title was vested for the purpose of interpreting North Carolina's recording scheme.
 
 IV
 Amount of the Lien
 
 15
 Finally, Southeastern states that, assuming arguendo Rentenbach was entitled to a lien, its amount ($334,377) was erroneously calculated. Southeastern asserts that the bankruptcy court used cost estimates, rather than actual costs, in adjusting the base contract price to reflect work order changes and cost savings. In its cross-appeal, Rentenbach urges that the bankruptcy court erred by concluding that Rentenbach had waived its lien as to $91,662 in "retainage."[6] Based on our review of the contract language, the billing statements, and the bankruptcy court proceedings, we hold that the district court did not err in affirming these bankruptcy court calculations.
 
 V
 Conclusion
 
 16
 We agree with the careful and detailed findings of facts and conclusions of law made by the district court and therefore affirm.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 The deed of trust was executed to TFM, Inc., as trustee and Southeastern Savings and Loan Association as beneficiary. Hereafter, both parties will be referred to as "Southeastern."
 
 
 [2]
 This Florida limited partnership was originally known as Urban Properties, IV. It changed its name to Capital Club Associates, and then later changed it back to Urban Properties, IV. For the sake of clarity, we refer to this entity only as Urban Properties
 
 
 [3]
 A deed of trust conveying the Capital Club to Urban Properties was recorded in December 1984
 
 
 [4]
 The lien related back to August 19, 1985, the day on which Rentenbach began work. See N.C.Gen.Stat. Sec. 44A-10
 
 
 [5]
 For instance, the lien statute requires that a party seeking to enforce a lien have a contract with the property owner. N.C.Gen.Stat. Sec. 44A-8. But the statute defines successors in interest as owners. N.C.Gen.Stat. Sec. 44A-7(3). Additionally, the North Carolina courts have liberally construed the ownership requirement when the owner has not acquired legal title to the property before executing the contract. See, e.g., Carolina Builders Corp. v. Howard-Veasey Homes, 72 N.C.App. 224, 229-31, 324 S.E.2d 626, 629-31, rev. denied, 313 N.C. 597, 330 S.E.2d 606 (1985)
 In contrast, North Carolina's registration statute narrowly circumscribes the applicability of security agreements to after-acquired property. N.C.Gen.Stat. Sec. 47-20.5; see also Schuman, 70 N.C.App. at 317, 319 S.E.2d at 311.
 
 
 [6]
 The construction contract provided: "The owner shall withhold as retainage ten (10) percent of the application for payment until fifty (50) percent of the work has been completed. Thereafter, no further retainage will be withheld from payments due."