JOHN CONNER CONSTRUCTION, INC., R&G CONSTRUCTION COMPANY, AND EGGERS CONSTRUCTION COMPANY, INC., PLAINTIFFS v. GRANDFATHER HOLDING COMPANY, INC., AND MOUNTAIN COMMUNITY BANK, A BRANCH OF CARTER COUNTY BANK, DEFENDANTS

No. COA11-1228

(Filed 2 October 2012)

## 1. Liens—materialman's lien—factual basis for claim of lien—failed to mirror complaint

The trial court did not err in granting defendant's N.C.G.S. § 1A-1, Rule 12(b)(6) motion to dismiss where plaintiffs' claim for a statutory lien on real property for improvements made to real property by a contractor dealing directly with the owner contained material facts which failed to mirror the complaint to enforce the lien.

## 2. Appeal and Error—dispositive issue ruled upon—issue not addressed

The Court of Appeals did not address plaintiffs' argument that the trial court erred in dismissing plaintiffs' claims based on failure to join a necessary party because the Court's ruling on

defendant's N.C.G.S. § 1A-1, Rule 12(b)(6) motion made a resolution of the joinder appeal unnecessary.

HUNTER, JR., Robert N., Judge, dissenting.

Appeal by plaintiffs from order entered 15 February 2011 by Judge Marvin P. Pope, Jr. in Avery County Superior Court. Heard in the Court of Appeals 21 March 2012.

*The Tricia Wilson Law Firm, PLLC, by Tricia L. Wilson and J. Thomas Dunn, Jr., for plaintiffs-appellants.*

*Roberson Haworth & Reese, P.L.L.C., by Alan B. Powell and Christopher C. Finan, for defendant-appellee Mountain Community Bank.*

BRYANT, Judge.

Where plaintiffs claim for a statutory lien on real property for improvements made to realty property by a contractor dealing directly with the owner contained material facts which failed to mirror the complaint to enforce the lien, we hold the trial court did not err in granting defendant's Rule 12(b)(6) Motion to Dismiss. Accordingly, we do not address plaintiffs' appeal that the trial court also erred in dismissing plaintiffs' claims based on failure to join a necessary party because our ruling on the Rule 12(b)(6) motion makes a resolution of the joinder appeal unnecessary.

*Facts and Procedural History*

Plaintiffs, John Conner Construction, Inc. ("JCC"), R & G Construction Company ("RGC"), and Eggers Construction Company ("ECC"), filed an amended complaint on 10 December 2010 against defendants, Grandfather Holding Company, LLC ("GHC") and Mountain Community Bank ("bank"), a branch of Carter County Bank. Mike Eggers ("Eggers") was President of ECC and vice-president of JCC and RGC.

Plaintiffs allege that from the spring of 2005 to January 2009, approximately 41.87 acres of land ("subject property") were improved by use of plaintiffs' labor and materials. The subject property is situated between Banner Elk and Linville, North Carolina and is located next to defendant bank. The subject property was owned by Wilmor Coporation ("Wilmor") in 2000 and shared a common driveway with defendant bank. In 2001, GHC expressed to Wilmor an

JOHN CONNOR CONSTR., INC. v. GRANDFATHER HOLDING CO.

[223 N.C. App. 37 (2012)]

interest in purchasing and developing the subject property. In 2004, Wilmor agreed to sell the subject property to GHC and also sold a site that was adjacent to the subject property.

Plaintiffs also allege that in 2004 they and GHC reached an oral agreement ("agreement") where plaintiffs would furnish all labor and materials incident to the grading, clearing, road construction, and installation of utilities needed to develop the subject property. According to plaintiffs, due to a long-standing business relationship between Hugh Fields ("Fields") (the president of GHC) and Eggers, the numerous contracts that they had entered into over a twenty-five year span had "always been on a 'handshake basis.' " Plaintiffs began working on the subject property even before GHC purchased it from Wilmor in October 2005 for $5.15 million. The purchase price was financed by defendant bank. Defendant bank and GHC entered into a loan agreement ("loan agreement") where defendant bank would loan a total of $6.8 Million to GHC for the purchase and development of the subject property. On 5 October 2005, GHC signed the deed of trust in favor of defendant bank.

From the spring of 2005 until 14 January 2009, plaintiffs alleged that they furnished valuable labor and materials to the subject property. On 19 October 2007, plaintiff's business manager presented to Fields on behalf of GHC, a bill in the amount of $1,377,774.02, which represented the cost of labor and materials accrued over a four-year period. Fields attempted to pay plaintiffs' invoice but was informed by defendant bank that all but $262,000.00 of the loan balance had been expended. Thus, Fields made a partial payment to plaintiffs in the amount of $262,000.00, leaving a significant balance owing to plaintiffs. Plaintiffs allege that they have demanded payment of the unpaid balance but that GHC has failed and refused to pay.

On 24 November 2008, defendant bank began foreclosure proceedings on the subject property owned by GHC and defendant bank purchased the subject property at public auction for $4,000,000.00, where defendant bank was the only bidder. Plaintiffs allege that they timely filed a claim of lien against GHC in the amount of $1,774,119.84 on 16 January 2009. Plaintiffs allege that defendant bank is a successor in interest to GHC, and as such, defendant bank assumed title subject to plaintiffs' claim of lien for $1,774,119.84.

The 10 December 2010 amended complaint sought enforcement of plaintiffs' claim of lien and enforcement of plaintiffs' claim of lien as superior to any claim to the subject property or loan proceeds by

defendant bank. Additional claims for relief were also alleged against one or both defendants, based on theories of express contract, constructive trust, unfair and deceptive acts and practices, and unjust enrichment.

On 20 December 2010, defendant bank filed a motion to dismiss plaintiffs' complaint for failure to state a claim pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure based upon lack of an express contract between any of the plaintiffs and defendant bank, lack of a legal duty owed by defendant bank to any of the plaintiffs, and inability of plaintiffs to avail themselves of any equitable remedy vis-à-vis defendant bank. Defendant bank also moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(7) for failure to name a necessary party, Fields. Plaintiffs' claim of lien asserts they contracted with Fields for the furnishing of labor and materials. On 4 January 2011, plaintiffs filed a motion for judgment on the pleadings against defendant GHC.

On 15 February 2011, the trial court entered an order granting defendant bank's motion to dismiss the amended complaint pursuant to Rule 12(b)(6) and 12(b)(7), dismissing, in its entirety, all plaintiffs' claims against defendant bank and against the subject property described in the claim of lien, dismissing and discharging the claim of lien filed pursuant to N.C. Gen. Stat. § 44A-16(4), and granting plaintiffs' motion for judgment on the pleadings against defendant GHC.[1] From this order, plaintiffs appeal.

---

Plaintiffs present the following issues on appeal: whether the trial court erred (I) by dismissing plaintiffs' claims against defendant bank for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) and (II) by dismissing plaintiffs' complaint for failure to name a necessary party pursuant to Rule 12(b)(7).

First, plaintiffs argue the trial court erred by dismissing their claims against defendant bank for failure to state a claim upon which relief can be granted when their amended complaint alleged a valid claim of lien pursuant to sections 44A-8 through 44A-13 of the North Carolina General Statutes.

"The motion to dismiss under [Rule 12(b)(6)] tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the

---

1. The trial court also denied plaintiffs' motions to reject filings, motion for sanctions, and motion to compel.

complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citations omitted).

> Dismissal is proper "when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."

*Ventriglia v. Deese*, 194 N.C. App. 344, 347, 669 S.E.2d 817, 819 (2008) (citation omitted).

Accordingly, our Court "must construe the complaint liberally and 'should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.' This Court must conduct a *de novo* review of the pleadings[.]" *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003) (internal citations omitted).

Section 44A-8 of the North Carolina General Statutes provides that:

> Any person who performs or furnishes labor or . . . materials . . . pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done . . . or material furnished . . . pursuant to the contract.

N.C. Gen. Stat. § 44A-8 (2011). "Owner" is defined as a "person who has an interest in the real property improved and for whom an improvement is made and who ordered the improvement to be made." N.C. Gen. Stat. § 44A-7(3) (2011). This Court has held that a person under contract to purchase property is an "owner" as contemplated by Section 44A-7(3), because they possess an equitable interest in the property. *See Carolina Builders Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 324 S.E.2d 626 (1985).

After review of the amended complaint, we determine plaintiffs had no statutory right to file a claim of lien on the subject property. As a starting point, we note plaintiffs' amended complaint alleges no facts suggesting ECC ever filed a claim of lien pursuant to Section 44A-12 or a notice of claim of lien pursuant to Section 44A-17 et seq.

Therefore, we only consider whether the acts alleged in plaintiffs' complaint necessarily defeat the claim of lien asserted by JCC and RGC.

JCC and RGC's "Claim of Lien on Real Property" states that materials were first furnished on 14 May 2004. Plaintiffs' complaint states that formal contract negotiations did not begin between GHC and Wilmor, the prior owner of the property, until June of 2005. Because the allegations of the complaint are treated as admitted, plaintiffs' admissions plainly belie a claim of materialman's lien against GHC, since GHC did not have *any* interest, equitable or otherwise, in the property on 14 May 2004, when plaintiffs first furnished materials. Thus, regardless of the issue of whether the deed to the property and deed of trust were part of the "same transaction,[2]" JCC and RGC were not entitled to a materialman's lien, as they did not contract with the "owner" of the subject property. N.C.G.S. § 44A-8. We decline plaintiffs' implicit invitation to extend the holding of *Carolina Builders* to cases in which the party against whom a lien is sought was not yet under a contract for sale at the time an alleged contract for work/materials was entered into.

In their second argument, plaintiffs contend that the trial court erred in dismissing plaintiffs' equitable claims for relief where the evidence demonstrates that defendant bank has been unjustly enriched by $1.8 million from plaintiffs' improvements to the subject property. Plaintiffs base their argument solely on the Supreme Court's holding in *Embree Construction Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 411 S.E.2d 916 (1992).

The *Embree* plaintiff, a construction contractor, alleged that it had entered into a contract with Rafcor, Inc. ("Rafcor") to supply labor and materials for the construction of a restaurant. *Id.* at 489, 411 S.E.2d at 919. Rafcor entered into a construction loan agreement with United Carolina Bank (UCB) in which UCB was to advance Rafcor money to be used for the construction project. *Id.* Rafcor's note was secured by a deed of trust on the project. *Id.* The *Embree*

---

2. Although not dispositive here, the term "same transaction" comes from the doctrine of instantaneous seisin which "provides that when a deed and a purchase money deed of trust are executed, delivered, and recorded as part of the same transaction, the title conveyed by the deed of trust attaches at the instant the vendee acquires title and constitutes a lien superior to all others." *West Durham Lumber Co. v. Meadows*, 179 N.C. App. 347, 352, 635 S.E.2d 301, 304 (2006) (citation omitted). Here, plaintiffs' complaint alleges that the deed of trust signed in favor of defendant bank was recorded on 5 October 2005, the same day it was executed. However, the closing attorney re-recorded the same deed of trust on 30 March 2006 due to a defective notary acknowledgement on the 5 October 2005 deed of trust.

plaintiff alleged that although in the past, UCB had paid the plaintiff directly from Rafcor's construction loan, the plaintiff was owed a balance of over $140,000.00. Because UCB had received all the security for which it bargained with Rafcor, and because UCB had refused to pay the plaintiff money remaining in the loan fund to satisfy the balance owed, the plaintiff alleged that UCB was unjustly enriched. *Id.*

The North Carolina Supreme Court found that the materialman's lien was not an adequate remedy for the contractor because "Chapter 44A does not provide relief for the contractor or subcontractor, in privity of contract with only the insolvent owner, who seeks payment from construction loan funds held by the lender. Notably, however, Chapter 44A does not expressly bar equitable relief to this end." *Id.* at 492, 411 S.E.2d at 921 (citation omitted). The *Embree* Court held that the plaintiff was entitled to equitable relief via an equitable lien where the defendants had been unjustly enriched, having received the security for which they had bargained for but refusing to release the remaining construction loan funds to compensate the plaintiff.

Importantly, in footnote three of the opinion, the N.C. Supreme Court states that

[t]his situation differs markedly from that in which the lender has disbursed all loan funds to the borrower, who diverts the funds to purposes other than paying contractors. *See* Lefcoe & Shaffer, *Construction Lending and the Equitable Lien*, 40 S.Cal.L.Rev. 444 (1967) (if funds disbursed once already, lender not unjustly enriched); Urban and Miles at 350 ("[T]here is justification for the [equitable lien] doctrine's application when the contractor has completed performance, the entire project itself is completed, and the lender forecloses, becoming the owner of the completed project seeking to retain undisbursed funds. But there is little justification for the doctrine's application when the lender has made a disbursement for all labor or materials furnished up through foreclosure without any knowledge of any unpaid claims, and funds are diverted from the project by the borrower. In that instance, application of the doctrine results in the inequity of the lender having to in effect pay twice for the same thing. Any application of the doctrine, therefore, should be restricted to obvious cases of unjust enrichment.").

*Id.* at 495-96, 411 S.E.2d at 922-23.

The distinguishing factor between *Embree* and the present case is the presence of remaining loan funds. In *Embree*, there was a result-

ing balance remaining in the loan fund, which UCB refused to disburse. Here, all of the loan funds have been disbursed, with the remaining $262,000.00 actually being disbursed to plaintiffs in partial payment of GHC's debt. Therefore, as noted in footnote three, there is "little justification for the doctrine's application" since there was no remaining balance of loan funds. We further conclude as a distinguishing factor from *Embree* that GHC was not an owner of the subject property when materials and labor were first furnished. Plaintiffs' argument is overruled.

As the Rule 12(b)(6) dismissal serves as an adequate basis for the trial court's order, we need not address the issue of whether the trial court erred in dismissing plaintiffs' claims based on failure to join a necessary party. The order of the trial court is affirmed.

Affirmed.

Judge BEASLEY concurs.

Judge HUNTER, JR., ROBERT N. dissents by separate opinion.

HUNTER, JR., Robert N., Judge, dissenting.

I dissent from the majority's opinion in the hope that our Supreme Court will clarify the answer to a question left unanswered by this Court's opinion in *Carolina Builders Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 324 S.E.2d 626 (1985). Namely, does a "subsequently acquired interest . . . support a materialman's lien even if no enforceable interest existed when the contract was made or the work commenced"? *Id.* at 230, 324 S.E.2d at 630. Under the facts in this case, I would extend the holding of *Carolina Builders* to stand for the proposition that GHC should be considered an "owner" under N.C. Gen. Stat. §§ 44A-8 and 44A-7(3), because it directed Plaintiffs to begin work on the subject property, and then later acquired legal title.

As noted in the majority's opinion, our Court held in *Carolina Builders* that a person under contract to purchase property is an "owner" as contemplated by Section 44A-8, because they possess an "equitable interest." *Id.* at 231, 324 S.E.2d at 631. In *Carolina Builders*, the trial court reached the following conclusion of law:

North Carolina General Statute 44A, Article 2, allows materialmen to [acquire] valid enforceable lien rights relating back in time to the first furnishing [of materials] under circumstances

where the person or entity with whom he contracted did not at that time have legal title but later did acquire legal title.

*Id.* at 230, 324 S.E.2d at 630 (alterations in original).

In evaluating this interpretation of the statute, our Court noted the following:

This conclusion appears tantamount to stating that any subsequently acquired interest will support a materialman's lien even if no enforceable interest existed when the contract was made or the work commenced. *While that may be an appropriate rule, it goes beyond the facts here and encompasses factual situations which are not before this Court.*

*Id.* (emphasis added) (footnote omitted) (citation omitted). Thus, the Court did not address the question presented by this case: namely, whether one who contracts for the provision of labor and materials who is not under an enforceable contract for sale, but who subsequently acquires title to the subject property, may subject such real property to a materialman's lien. I would answer this question in the affirmative, in light of the rationale of *Carolina Builders* and the purpose of the materialman's lien statute.

As the Court in *Carolina Builders* observed, "[t]he purpose of the materialman's lien statute is to protect the interest of the supplier in the materials it supplies; the materialman, rather than the mortgagee, should have the benefit of materials that go into the property and give it value." *Id.* at 229, 324 S.E.2d at 629. Thus, "as these statutes afford new remedies, they are liberally construed to effect the legislative purpose[.]" *Id.* at 234, 324 S.E.2d at 632 (quoting *Lemire v. McCollum*, 425 P.2d 755, 759 (Or. 1967)).

As an article cited by the Court in *Carolina Builders* explains, a narrow interpretation of the statute can produce an inequitable result in cases, such as this, which involve an "overeager purchaser":

Some courts draw a distinction whereby they permit the lien to attach if the purchaser holds an equitable title under an enforceable executory contract, but deny the lien if the purchaser has only an unenforceable agreement to purchase that is later fully executed. This distinction can be criticized as overly technical since neither circumstance can be reasonably said to have influenced the parties' behavior. It should not be expected that, prior to contracting with a homebuilder, a laborer or supplier of mate-

rials who is unversed in legal theories of ownership will undertake a costly and time-consuming title examination, or demand from a prospective employer or customer proof that he has equitable title to the building site. Instead, a more appropriate rule has been adopted by the courts of Oregon and Kansas: any subsequently acquired interest will support a materialman's lien even if no enforceable interest in the property existed when the contract was made or the work was commenced.

Julianne G. Douglass, *Materialmen's Liens in North Carolina: The Problem of the Overeager Purchaser*, 61 N.C. L. Rev. 926, 934 (1983) (footnotes omitted).

Thus, to hold that Plaintiffs in this case cannot make out a claim of lien because GHC did not have an enforceable contract for sale for the subject property at the time it requested Plaintiffs begin work, despite the fact that it subsequently acquired title consistent with all parties' expectations, in essence allows Defendants in this case to "feed an estoppel," and produces a result contrary to the remedial nature of the lien statute. This inequitable result is particularly troublesome given the mandate in our Constitution that "[t]he General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor." N.C. Const. art. X, § 3.

Although in no way binding on this state's appellate courts, at least one federal court has observed that *Carolina Builders* "certainly [leaves] open the possibility that the same result might be reached even if the entity with whom the materialman contracted had no enforceable interest when the contract was made or the work commenced, *provided that such entity later acquires legal title.*" *In re: Alexander Scott Group, Ltd.*, No. B-94-10704C-11D, 1995 WL 17800994, at *4 (Bankr. M.D.N.C. Aug. 1, 1995) (emphasis added). Our Supreme Court is ultimately the appropriate venue to address this possibility.

For the foregoing reasons, I respectfully dissent from the majority.