Wachovia Bank, N.A. v. Superior Constr. Corp., 2010 NCBC 9.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 21256

WACHOVIA BANK NATIONAL
ASSOCIATION, and PRESERVE
HOLDINGS, LLC, as Substituted
Successor Plaintiff,
       Plaintiff

   v.

SUPERIOR CONSTRUCTION
CORPORATION, GEORGE
ROUNTREE, III, Receiver for Intracoastal
Living, LLC; WESTERN SURETY
COMPANY and COASTAL SASH & DOOR,
       Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION
ON MOTION FOR
JUDGMENT ON THE PLEADINGS**

   THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to Rules 2.1 and 2.2 of the General Rules of Practice for the Superior and District Courts, and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, is before the court upon Plaintiff Preserve Holdings, LLC's Motion for Judgment on the Pleadings (the "Motion") pursuant to the provisions of Rule 12(c), North Carolina Rules of Civil Procedure ("Rule(s)"); and

   After considering the arguments, briefs, other submissions of counsel and appropriate matters of record, as discussed *infra*, the court concludes that the Plaintiff's Motion should be GRANTED, for the reasons stated herein.

   *K&L Gates, LLP by John R. Gardner, Esq. for Plaintiff Wachovia Bank National Association.*

*Andresen and Arronte, PLLC by Julian M. Arronte, Esq. and Mark E. Carlson, Esq. for Plaintiff Preserve Holdings, LLC.*

*Shumaker, Loop & Kendrick, LLP by Steele B. Windle, III, Esq. for Defendant Superior Construction Corporation.*

*Rountree, Losee & Baldwin, LLP by Geoffrey A. Losee, Esq. for George R. Rountree, III, Esq., Receiver for Intracoastal Living, LLC.*

*Conner Gwyn Schenck, PLLC by C. Hamilton Jarrett, Esq. and Douglas P. Jeremiah, Esq. for Defendant Western Surety Company.*

*Shipman & Wright, LLP by James T. Moore, Esq. for Defendant Coastal Sash & Door.*

Jolly, Judge.

## I.

## PROCEDURAL BACKGROUND

[1] On October 23, 2007, Plaintiff Wachovia Bank National Association ("Wachovia") filed its Complaint. This Complaint seeks a judicial determination by way of declaratory judgment that a lien created by Wachovia's deed of trust on that parcel of real estate located in Brunswick County, North Carolina, as described in deeds recorded in Book 1972 at pages 1033 and 1037, Brunswick County, Registry ("the Property"), is prior to a claim of lien on the same Property for labor and materials filed by Defendant Superior Construction Corporation ("Superior").

[2] On January 14, 2008, Superior served and filed its Answer. Superior did not raise any counterclaim in the Answer, and no responsive pleading was required of Wachovia.

[3] On July 24, 2008, Defendant Western Surety Company ("Western") filed a Motion to Intervene pursuant to Rule 24.

[4]     On September 15, 2008, Preserve Holdings, LLC ("Preserve") filed a Motion to Substitute (the "Preserve Motion") itself as a party Plaintiff in the stead of Plaintiff Wachovia.

[5]     On October 15, 2008, the court granted the Preserve Motion, and ordered that Preserve thereafter be substituted as the party Plaintiff in this civil action for all purposes, and that the case caption be changed to reflect Preserve's position as the Plaintiff.

[6]     On November 3, 2008, Preserve filed its Motion.

[7]     On November 24, 2008, the court granted Western's Motion to Intervene as a party Defendant.

[8]     On December 4, 2008, Western filed its Answer, which contained a crossclaim against Superior and George Rountree, Receiver ("Receiver") for Intracoastal Living, LLC ("Intracoastal").  By way of its crossclaim, Western sought declaratory relief pursuant to Rule 57 and N.C. Gen. Stat. § 1-253 *et seq.* (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), asking the court for determination of the priority of Western's claim to the balance of funds owing to Superior with regard to a specific contract entered into by Superior and Intracoastal.

[9]     On January 9, 2009, Intracoastal filed its Answer to Western's crossclaim.

[10]    On February 19, 2009, Wachovia voluntarily dismissed with prejudice its claims propounded against Defendant General Electric Company GE Consumer & Industrial Products Division.

[11]    The Motion has been briefed and is ripe for determination.

II.

FACTS

Among other things, the Complaint alleges, and the Answers admit:

[12]     Intracoastal entered into a construction agreement with Superior wherein Superior, as general contractor, agreed to construct improvements on a multi-building condominium project (the "Property") in Brunswick County known as the Preserve.[1] The first contract ("First Contract") between these entities involved the construction of two Preserve condominium buildings ("Buildings Two and Three") and a clubhouse (collectively the "Project").[2]  The First Contract amount was $19,300,000, subject to additions and deductions.[3]

[13]     On May 14, 2005, Western issued a payment bond ("Bond") in connection with the First Contract.[4]  As of December 10, 2008, the date on which Western filed its answer to the Complaint, Western had made payments pursuant to the Bond to companies supplying labor and/or materials to Superior in connection with the First Contract totaling $1,623,759.30; and as a result, Western claims an interest in the funds at issue in this action.[5]

[14]     To secure a loan made by Wachovia to Intracoastal, Intracoastal executed and delivered to Wachovia a construction loan agreement dated May 19, 2005; a promissory note dated May 19, 2005, in the principal sum of $22,835,000 and a deed of trust dated May 19, 2005, recorded in Book 2148 at page 860, Brunswick County

---

[1] Superior Ans., ¶ 8; Western Ans., ¶ 8.
[2] Superior Ans., ¶ 9; Western Ans., ¶ 9.
[3] Superior Ans., ¶ 10; Western Ans., ¶ 10.  *See also* Compl., ¶ 29; Superior Ans., ¶ 29; Western Ans., ¶ 29.
[4] Western Resp. Br. Opp. Mot. J. Pleadings, 2.
[5] *Id.*, 3.

Registry.[6]  The deed of trust undertook to use the Property to secure the construction loan by Wachovia.

[15]   Portions of the Project have been completed, and certain condominium units in Buildings Two and Three have been sold to third parties.[7]

[16]   Superior filed a claim of lien on the Property on September 25, 2007.[8]  In this claim of lien, Superior alleged that it first furnished labor and material to the Project on April 22, 2005, and was then owed $1,286,000 by Intracoastal for the work performed.[9]  This claim of lien has been cancelled.[10]  Superior filed another claim of lien on the Property on October 12, 2007, in the amount of $952,091 (the "Lien").[11]

[17]   At the time Superior submitted its first two applications for payment for work performed on the Project, it submitted with each application a document entitled "Partial Waiver of Lien" (herein "Waiver(s)"), dated May 11, 2005, and June 9, 2005, respectively.[12]

[18]   The Waivers, attached to the Complaint as Exhibits Two and Three, contain identical boiler-plate provisions and differ primarily in the sum of the draw amount requested by Superior, the date through which Superior waived and released its lien rights and the identity of the signatory.  Exhibit Three states in pertinent part that Superior, in consideration for $856,363.50, the sum of its then-current draw request of $572,863.50 and the prior draw request of $283,500.00, does hereby:

> waive, relinquish, surrender and release any and all
> lien, claim, or right to lien on the above said described

---

[6] *See* Compl., ¶ 11-12; Superior Ans., ¶ 11-12.
[7] Superior Ans., ¶ 13; Western Ans., ¶ 13.
[8] Superior Ans., ¶ 15; Western Ans., ¶ 15.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *See* Compl., ¶ 19; Superior Ans., ¶ 19; Western Ans., ¶ 19.  *See also* Compl, Exs. 2-3.

project and premises, arising under and by virtue of the mechanic's lien laws of the State of North Carolina on account of any labor performed or the furnishing of any material to the above described project and premises up to and including the (day) 31st day of (month) May, (year) 2005.

[19] The amounts reflected in this Waiver were funded by Wachovia and were paid to Superior,[13] in a total amount of $856,363.50.[14]

[20] With each pay application, Superior also submitted a document entitled "Affidavit in Partial Release of Lien Waiver" ("Lien Affidavit(s)").[15] In the Lien Affidavits, Superior purported to waive any claim of lien against the Property with regard to the amount of funds actually paid to and received by Superior under a particular application for payment.[16]

[21] Western made payments under the Bond to companies supplying labor and/or materials to Superior in connection with the First Contract totaling $1,623,759.40. Western claims an interest in the funds at issue in this action.[17]

III.

DISCUSSION

[22] Rule 12(c) allows a party to move for judgment on the pleadings:

after the pleadings are closed but within such time as not to delay the trial. If, on such a motion, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

---

[13] Compl, ¶ 20; Superior Ans., ¶ 20; Western Ans., ¶ 20.
[14] Compl, Exs. 2-3.
[15] Compl, ¶ 22; Superior Ans., ¶ 22; Western Ans., ¶ 22. *See also* Compl., Ex. 4.
[16] *Id.*
[17] Western Resp. Br. Opp. Mot. J. Pleadings, 3.

[23]    In North Carolina, "[j]udgment on the pleadings is not favored by law and the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmovant." *Carpenter v. Carpenter*, 189 N.C. App. 755, 762 (2008).

[24]    Pleadings are closed when a defendant has filed an answer to a plaintiff's complaint. *See, e.g.*, *Yancey v. Watkins*, 12 N.C. App. 140, 141 (1971); *Brown v. American Messenger Servs.*, 129 N.C. App. 207, 213 (1998). Defendants Superior and Western have served Answers to Wachovia's Complaint, and the pleadings therefore are closed.[18]

[25]    For it to prevail on a Rule 12(c) motion, the movant must establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter*, 189 N.C. App. at 761 (2008). The judge must consider "only the pleadings and any attached exhibits, which become part of the pleadings." *Minor v. Minor*, 70 N.C. App. 76, 78 (1984). Indeed, "no evidence is to be heard, and the trial judge is not to consider statements of fact in the briefs of the parties. . ." *Id.*

[26]    However, where "documents are attached to and incorporated within a complaint, they become part of the complaint" and may "be considered in connection with a Rule 12(b)(6) or 12(c) motion without converting it into a motion for summary judgment." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204 (2007); *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60-61 (2001). Also, the court may properly consider documents that are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant.

---

[18] Intracoastal has not filed an answer in response to Wachovia's Complaint. Because Intracoastal did file an answer in response to Western's crossclaim, the court concludes that Intracoastal has not intended to answer the Complaint. As such, the court deems the issue to be abandoned by Intracoastal, and the pleadings are closed.

*Robertson v. Boyd*, 88 N.C. App. 437, 441 (1988) ("Because these documents were the subjects of some of plaintiffs' claims and plaintiffs specifically referred to the documents in their complaint, they could properly be considered by the trial court."). Consequently, the documents attached as exhibits or otherwise referred to in the Complaint in this action are deemed to be before the court for Rule 12(c).

[27] On December 8, 2008, Preserve filed an Objection to Superior Construction Corporation's Inclusion of Matters Outside of the Pleadings ("Objection"), objecting specifically to documentary evidence reflected in Exhibit A ("Exhibit A") [19] to Superior's response brief in opposition to Preserve's Motion for Judgment on the Pleadings. No party has filed a response to the Plaintiff's Objection. The court has reviewed the record and the Objection, and deems the Objection to be well founded. Accordingly, the objection is SUSTAINED. Any evidence contained in Superior's Exhibit A is excluded and is not considered by the court in its determination of the Motion.

[28] Preserve, as substituted Plaintiff in lieu of Wachovia, contends that by submitting the lien Waivers, Superior waived its lien rights relative to the Wachovia loan up to and including May 31, 2005; and consequently, that the Wachovia deed of trust on the Property has priority over the lien rights of Superior for obligations of the Project up to that date. Preserve contends that the pleadings establish its rights in this regard as a matter of law and that it should have judgment in its favor declared pursuant to Rule 12(c).

[29] Superior contends that it should not be deemed to have waived any claim of lien it had against the Property or the Project as a whole. It disputes that the deed of

---

[19] Samples of certain lien subordination documents.

trust executed by Intracoastal and delivered to Wachovia constitutes a first lien on the property.[20]

[30]    Pursuant to Article 2 of North Carolina's materialman's lien statute, G.S. 44A-8:

> Any person who performs or furnishes labor or professional design or surveying services or furnishes materials or furnishes rental equipment pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished or equipment rented pursuant to the contract.

[31]    G.S. 44A-10 provides that "[a] claim of lien on real property granted by this Article shall relate to and take effect from the time of the first furnishing of labor or materials at the site of the improvement by the person claiming the claim of lien on real property (the "Date of First Furnishing").

[32]    "The lien provided for by G.S. 44A-8 is inchoate until perfected by compliance with G.S. 44A-11 and -12. . . . By virtue of [G.S. 44A-10], a contractor's lien for all labor and materials furnished pursuant to a contract is deemed prior to any liens or encumbrances attaching to the property subsequent to the date of the contractor's first furnishing of labor or materials to the construction site." *Frank H. Conner Co. v. Spanish Inns Charlotte, Ltd. et al.*, 294 N.C. 661, 667 (1978).

[33]    The purpose of the North Carolina "materialman's lien statute is to protect the interest of the supplier in the materials it supplies; the materialman, rather than the mortgagee, should have the benefit of materials that go into the property and give it

---

[20] Superior Br. Opp. Mot. J. Pleadings, 3.

value. . . . To implement this purpose, courts should construe the statute so as to further the legislature's intent . . ." and construe it "to advance the legislative intent in enacting it." *Carolina Builders Corp. v. Howard-Veaser Homes*, 72 N.C. App. 224, 229 (1985).

[34]   However, in certain circumstances the materialman's lien may be waived, subordinated or released. *See* G.S. 44A-12(f).[21]   Indeed, a bank providing a construction loan in exchange for a deed of trust can "cut-off the lien rights of the lien claimants in that [the bank], with actual or constructive knowledge of the commencement of construction, could have required lien waivers." *Id.* at 233. Moreover, a construction lender has "the resources and the bargaining power to require the vendee to obtain lien waivers from material suppliers." *Id.* at 234. *See also Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 660 (1991) (recognizing the use of lien waivers, other than in anticipation of and in consideration for the awarding of a contract); *Mace v. Bryant Constr. Corp.* 48 N.C. App. 297, 303 (1980)  (where president of construction company expressly waived company's right, as general contractor, to file a materialman's lien against the property, in order to induce an investing group to finance development of the real property at issue). *But see Southeastern Sav. & Loan Ass'n v. Rentenbach Constructors, Inc.*, 114 B.R. 441, 445 (E.D.N.C. 1989) (determining that a contract provision providing that the title to the work at issue would pass "free and clear of all liens" was not a complete waiver of statutory lien rights).

---

[21] G.S. 44A-12(f) provides, "[a]n agreement to waive the right to file a claim of lien on real property granted under this Part, or an agreement to waive the right to serve a notice of claim of lien upon funds granted under Part 2 of this Article, which agreement is in anticipation of and in consideration for the awarding of any contract, either expressed or implied, for the making of an improvement upon real property under this Article is against public policy and is unenforceable.  This section does not prohibit subordination or release of a lien granted under this Part or Part 2 of this Article."

[35]     In determining the contended lien rights of respective parties to an action, to the extent the issue rests upon contract interpretations, it presents a question of law for the court.  *Lee v. Scarborough*, 162 N.C. App. 674, 676 (2004), citing *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827 (2000).  When the language of a contract is clear and unambiguous, "[i]t must be presumed the parties intended what the language used clearly expresses . . . and the contract must be construed to mean what on its face it purports to mean."  *Hartford Acc. & Indemnity Co. v. Hood*, 226 N.C. 706, 710 (1946).

[36]     Here, the court is faced with a situation in which the pleadings clearly establish that Defendant Superior executed the Waivers in exchange for consideration from Wachovia.  The issue the court must determine is whether, as between Wachovia and Superior, the scope of the Waivers extends to preclude Superior's lien on the Property as between it and Wachovia.  Superior and Western contend that the Waivers only relate to the rights Superior had with regard to payments for labor and materials it expended on the Project.  Wachovia contends that the language of the Waivers clearly and expressly preclude Superior's lien on the Property as between it and Wachovia.

[37]     Superior and Western both argue that when a claimant signs a lien waiver and accepts partial payment, such payment reduces the amount payable to the lien claimant by the amount of payment received but does not change the property liened or the Date of First Furnishing.  Western contends that "[i]nterim lien waivers operate only to reduce the amount of the inchoate lien rights, not their reach."[22]

[38]     Western cites *Frank, supra*, to support its argument that a general contractor's waiver of lien as to certain labor or materials, other than as to its amount,

---

[22] Western Br. Resp. Opp. Mot. J. Pleadings, 11.

does not alter its lien arising form the contract as a whole. In *Frank*, the court declined to limit the definition of "labor," as used in G.S. 44A-8, stating:

> Finally, to so limit the definition of "labor" to that suggested by defendant would impose an impermissible burden on the contractor. The contractor has made an indivisible contract for construction with the owner, and we cannot demand of the contractor that it keep separate records regarding that work which is "labor" under a proposed restricted definition of that term, and that work which is not. As this Court has said, "The plaintiff having built a house for the defendant was entitled to his mechanic's lien therefore, not merely for the value of the labor expended but for the contract price of the house. . . . When the contractor undertakes to put up a building and complete the same, the contract is indivisible and his 'mechanic's lien' embraces the entire outlay, whether in labor or material, being for 'work done on the premises,' [Rev., s. 2016] *i.e.* for the betterments on it. The 'laborer's lien' is solely for labor performed. The mechanic's lien is broader and includes the 'work done,' *i.e.* the 'building built' or superstructure placed on the premises. [Citations omitted.]"
>
> *Id.* at 670-71, citing *Broyhill v. Gaither*, 119 N.C. 443 (1896).

[39]    This court recognizes that the construction work referenced in Superior's Waivers may be somewhat analogous to the work at issue in *Frank*. Both involve discrete activities that relate to and are part of a larger project. In *Frank*, the court suggests that the "indivisible" nature of the contract between the contractor and the owner causes the contractor's mechanic's lien to encapsulate the entire project, not just work performed. This court does not disagree. Indeed, contractors are able to and often do enforce their mechanic's liens against the whole of a property on which they worked or provided materials.

[40]    However, *Frank* does not suggest that contractors cannot contract away or waive their lien rights on the underlying property.  Indeed, such agreements are anticipated by G.S. 44A-12(f), albeit in a limited fashion.  It would be require an expansive reading of *Frank* to conclude that the Supreme Court was suggesting that the waivers, subordinations and releases anticipated by G.S. 44A-12(f) could not be utilized pursuant to a contract.  This court does not read *Frank* so broadly.

[41]    In further support of its position, by way of a filing dated February 12, 2010, Superior submitted suggested subsequently decided authority for the court's consideration.  The matter it relies upon is a November 24, 2009 summary judgment order (the "Bankruptcy Order") in a proceeding in the United States Bankruptcy Court for the Eastern District of North Carolina, Wilmington Division.  The case is *In re Watermark Marina of Wilmington, LLC*, Case No. 08-08103-8-JRL; and is Adversary Proceeding No. L-08-00254-8-JRL, captioned as *Cowper, Inc. v. Watermark Marina of Wilmington LLC, et al.*[23]  A fair review of the Bankruptcy Order reveals that while the court's analysis is well done and is instructive on the issues raised in the Motion, the facts there are materially different from those in the instant matter.  Accordingly, it is not persuasive on the issues raised here.

[42]    Superior and Western also argue that the practical effect of allowing the Waivers to preclude Superior's rights in the Property would be to change the Date of First Furnishing of labor and/or materials for the Project, as anticipated by G.S. 44A-10. They argue that the Date of First Furnishing never changes because, if it did, the

---

[23] Preserve has objected to the court's consideration of the Bankruptcy Order on the grounds that it does not constitute "controlling authority" as required for a subsequently-decided submission by Rule 15.9 of the Rules of Practice for the North Carolina Business Court.  However, the court in its discretion concludes that it is appropriate for it to consider the Bankruptcy Order, and Preserve's objection is OVERRULED.

certainty and security afforded by the statutory materialman's liens to those providing labor and supplies on constructions projects – and indeed, the purpose of the statute – would be thwarted.

[43]    The court disagrees.  If a party chooses lawfully to change its position on a hierarchy of liens, by contractual waiver or otherwise, the party still remains certain and secure of its new position.   While making such a business agreement may not be wise in hindsight, the law does not prevent the parties from doing so.  The cases Western cites in support of its argument, *O&M Indus. v. Smith Eng'g. Co.*, 360 N.C. 263, 266 (2006) and *Equitable Life Assurance v. Basnight*, 234 N.C. 347, 351 (1951), do not suggest that either the purpose of the materialman's statutes or the doctrine of relation-back is incongruous with the concept of contracting away such statutory rights and, in doing so, creating a new Date of First Furnishing.

[44]    Superior further argues that the law has developed subordination of lien agreements to address what it believes should be an unchanging Date of First Furnishing.  Such a document,[24] Superior argues, allows a bank to take priority over a contractor's statutory liens without a resetting of the Date of First Furnishing; and it contends Wachovia should have used such an instrument.  Superior does not cite any statutory or case law authority that would require Wachovia to have used such a document in lieu of an express lien waiver in obtaining lien priority, and its argument in this regard is not persuasive.

[45]     The legal impact of the Waivers and the question of whether Superior subrogated its claim on the Property to Wachovia when it issued the Waivers are questions of law, not fact.  *Lee,* 162 N.C. App. at 676.  As a matter of contractual

---

[24] *See* ruling, ¶ 27, *supra.*

construction, the court must construe the Waivers to mean what on their face they purport to mean. *Hartford Acc. & Indem. Co. v. Hood*, 226 N.C. 706, 710 (1946).

[46]     The prohibition of G.S. 44A-12(f) with regard to waivers applies only to those waivers made "in anticipation of and in consideration for the awarding of a contract . . . for the making of an improvement upon real property." The pleadings establish that this prohibition does not apply in the case *sub judice*, and neither Superior nor Western claims that it does.

[47]     Further, the Waivers clearly provide that in exchange for the consideration received, Superior did "waive, relinquish, surrender and release" "any and all liens, claims or rights to liens" [25] it might have on the Project, arising under North Carolina law, on account of the work it performed up to and including May 31, 2005. The words of waiver are clear and not ambiguous. Further, the words "any and all" suggest there was no limitation on Superior's waiver of its rights. Moreover, the "on account of" language would exclude from the waiver what future rights Superior would gain upon future provisions of labor and material. Such an interpretation would not be inconsistent with the "any and all" language.

[48]     Accordingly, reading the contract as a whole, the court is forced to conclude that the language of the Waivers clearly and unambiguously expresses Superior's intent, and binding contractual agreement, to waive its existing lien rights, including those arising from its date of first furnishing of labor and materials on the Project, in exchange for the consideration provided by Wachovia, up to and including May 31, 2005. *Hartford*, 226 N.C. at 710.

---

[25] Compl., Ex. 2 and 3.

[49]     One effect of this contract is a change in Superior's Date of First Furnishing of labor and materials from a date preceding Wachovia's deed of trust to one after May 31, 2005, thus placing Superior's claims behind Wachovia's in priority.  While such a result may seem harsh, the wording of the contract clearly demonstrates the parties' intent to achieve such a result.[26]  Superior cannot successfully rely upon the materialman's statute when it waived the statute's protections.  *See*, e.g., *Miller v. Lemon Tree Inn, Inc.*, 39 N.C. App. 133, 140 (1978) ("A beneficiary of [G.S. 44A] . . . should not be permitted to avoid his express contract and seek the aid of a statutory procedure which is equitable in nature").

IV.

CONCLUSION

[50]     Based upon the pleadings, the court CONCLUDES that that the Wachovia deed of trust lien had priority over Superior's claim of lien; and that Plaintiff Preserve Holdings, LLC, as substituted Plaintiff in this action, is entitled to judgment in its favor upon the First Claim for Relief (Declaratory Judgment Regarding Lien Priority) in this matter.

[51]     NOW THEREFORE, based upon the foregoing CONCLUSION, it hereby is ORDERED that Preserve Holdings, LLC's Motion for Judgment on the Pleadings is GRANTED; and the court hereby DETERMINES and DECLARES that the lien on the Property reflected in Wachovia's deed of trust dated May 19, 2005, and recorded in Book 2148 at page 860, Brunswick County Registry, is prior to any claim of lien on said Property by Superior for labor and materials furnished by Superior before June 1, 2005.

---

[26] The court notes that had a different result been intended, it would have been a mechanically simple task to narrow the broad and clear language of the Waivers.

[52]     The court's determination with regard to Plaintiff's First Claim for Relief is dispositive of all issues in this matter, including any issues raised by Plaintiff's Second Claim for Relief (Determination of Amount Due) and the crossclaim by Western against the Receiver; and no action or ruling with regard to either the Second Claim for Relief or the Western crossclaim is required.

[53]     Accordingly, this civil action now is CONCLUDED and DISMISSED.

[54]     Each party shall bear its own costs.

SO ORDERED, this the 23rd day of April, 2010.